## MILLER v. SHIELDS ET AL.

WILL.—*Construction of.*—*Tenancy for Life.*—*Reversion.*—Where, by the terms of his will, the testator devised his real estate, subject to certain charges thereon, to his widow, during her lifetime, and directed that at her death, it should be sold by his executor, and the proceeds thereof divided, in certain proportions, amongst certain of his children, such widow, on accepting such provision, became the tenant for life of such estate, entitled to all the rights and subject to all the liabilities of such tenancy, except in so far as modified by the terms of such will; and such children became the reversioners of such estate.

TENANT FOR LIFE.—*Repairs.*—*What Bound to Make.*—*Act of God.*—The tenant of an estate for life is bound to keep in repair the improvements which are upon it at the time it comes into his possession, except where the same are destroyed by the act of God.

SAME.—*Injunction.*—*Waste.*—*Growing Timber.*—Where the tenant of an estate for life takes timber growing thereon, for the purpose of replacing an improvement thereon which has been destroyed by the act of God, he is liable to the reversioner in an action for waste, and may be enjoined from its continuance.

SAME.—Where the tenant of an estate for life, out of the profits thereof, has replaced an improvement thereon, which has been destroyed by the act of God, he has no right to reimburse himself for such outlay, by selling or bartering the timber growing thereon; and if he so disposes of such timber he thereby commits waste.

SAME.—The tenant of an estate for life has a right to take, of the timber growing thereon, sufficient to make all necessary repairs which he, as such tenant, is bound to make; but, unless it is clearly the most economical mode of making such repairs, he has no right to exchange it for lumber with which to make such repairs.

SAME.—*Defence to Action for Waste.*—That the tenant of an estate for life, at his own expense, has made valuable improvements thereon, which he was not bound to make, is no ground of defence or recoupment in an action against him, by the reversioner, for waste in selling the timber growing thereon.

From the Harrison Circuit Court.

*G.' V. Howk, W. W. Tuley* and *D. C. Anthony,* for appellant.

*S. K. Wolfe,* for appellees.

PERKINS, J.—Complaint to restrain future waste, and to recover damages for that already committed.

Judgment below for the defendants.

This case is as follows:

Jesse Shields departed this life in 1847, leaving a will, the first item of which reads thus:

"I give and devise to my beloved wife, Catherine Shields, during her natural life, my home farm, upon which I now reside, being the north-east quarter," etc., (giving the boundaries of the farm) "containing about one hundred and sixty acres, together with all the household furniture, stock, and all other movable property on the same, to be held and enjoyed by her for her support, and that of my unmarried daughters, Rachel Shields, Lydia Helen Shields, Mary Pamilia Shields and Elizabeth Marsh, widow of Jesse C. Marsh, deceased, and her three children by said Marsh, during the time my said daughters may continue to live single; and if any of them should marry, it is my will that they shall receive, out of my estate, the sum of two hundred and fifty dollars, each, that being the portion heretofore advanced to each of my children who have married; upon which they are to relinquish to their mother, and sisters who may remain single, all further benefit of said home farm, and property bequeathed with the same as above. And at the decease of my said wife, it is my wish that the said farm, together with the personal property and stock which may then be upon the same, be sold by my executor upon such terms as he, in his discretion, may deem most advantageous, the proceeds of which shall be equally divided among all my children, with the exception of Margaret

Bean and the daughter of my son, John Shields, neither of whom are to receive any thing more of my estate."

It is not material, in the decision of this cause, to notice any other of the provisions of the will.

The testator, Jesse Shields, as has been stated, died in 1847. It was admitted on the trial that Edward Miller, the plaintiff, "was, by purchase and conveyance from children of decedent, the owner in fee of the undivided three-sevenths part of said home farm, subject to the life-estate of said Catherine Shields."

Catherine Shields, under the above provision of the will of Jesse Shields, became and was tenant for life, with the rights, perhaps a little restricted, of such a tenant, on the one hand, and subject to the duties and liabilities of such a tenant, on the other. One of those duties was to abstain from the commission of waste.

The acts constituting the waste charged in the complaint are the selling of walnut and poplar timber trees, and permitting them to be cut and removed from the farm, by the purchaser, her co-defendant, Windell. The third paragraph of answer, in defence of the acts committed, follows:

" And for further answer to so much of said complaint as seeks to recover damages, said defendant Catherine Shields, for herself alone, says, that it is true, as charged in said complaint, that she is the widow of Jesse Shields, deceased, and is the tenant for her own life of the lands in the plaintiff's complaint described; but she says, that, by natural causes, the houses, barns and other buildings on said farm became very much out of repair, so that, in the year ——, it was necessary, for the benefit of the said plaintiff and the other owners of the inheritance, that large expenditures be made for such necessary repairs, and that, in order to save the timber growing on said farm, which, by law, she was entitled to use for such repairs, she purchased, with her own money, a large amount of lumber, timber, boards, shingles and other like mate-

rial, for the repairing of said farm and the buildings and fences thereon, and for the erection of suitable and necessary new buildings and fences on said farm, amounting in value to three or four hundred dollars, all of which was used by her in the said necessary improvements and repairs of said farm, and for the benefit of said inheritance, and that, by reason of said expenditure, the timber on said farm was saved, and said inheritance was benefited, to the amount and value of five hundred dollars, which amount, she asks, may be recouped from any damages said plaintiff and the other owners may show themselves entitled to in said action."

To this paragraph of answer a demurrer was overruled, and exception taken.

Reply in denial. Trial by the court. Judgment, as has been stated, for the defendants.

On the trial, the court permitted the defendant Catherine to prove that she built a new barn, out of the income derived from the farm.

William T. Shields, a witness, testified:

"I know the defendant, my mother, built a new barn on the farm; would estimate it at five hundred dollars; old barn burned by lightning; the new barn was built at her expense, out of the proceeds of the farm; she has re-roofed buildings at an expense of one hundred dollars, out of the proceeds of the farm; barn was built in 1854 or 1855, and was necessary  *  *  *  ; she has given the children, seven in number, two hundred dollars, each, out of the income and profits of the farm; Eli Miller owed her one hundred and fifty dollars, or more, of borrowed money, out of the profits and income of the farm, at the time she sold these trees to Windell;" (which was in 1873, eighteen years or more after the building of the barn;) "heard her say that Jonathan Hisey owed her borrowed money, also derived from the farm."

There was other testimony touching the improvements made and paid for out of the income of the farm. The

testimony in reference to the building of the barn was objected to.

The evidence is in the record.

The overruling of the demurrer to the third paragraph of answer is assigned for error, in this court, as is also the overruling of the motion for a new trial.

We will first consider the ruling on the demurrer to the third paragraph of the answer. That paragraph is bad for uncertainty. It consists of a statement of a series of conclusions, arrived at by the party, without giving the court the facts to enable it to judge as to the correctness of the conclusions pleaded. It is assumed that the court will take the conclusions of the pleader as correct. But the rule of law is, that pleadings must state facts, with reasonable definiteness and certainty, to enable the court to draw upon them the legal conclusions. That the paragraph is defective, in this particular, is manifest on perusal. No analysis of it is required.

Whether the paragraph is so defective, in this particular, as to render it bad on demurrer, we need not decide. It is bad, in substance, on another ground. It rests on an erroneous legal basis. It assumes two legal propositions, one of which is false, without exception, and the other of which is only true in exceptional cases, and the paragraph does not state facts bringing this case within the exceptions.

It assumes that a tenant for life may build new buildings in place of those destroyed by the act of God, and may commit waste by taking timber from the farm, with which to erect such new buildings; and that such tenant may exchange timber, growing on the farm, for lumber, with which to make repairs upon buildings, which it is the duty of the tenant to make.

We shall notice these propositions again, as we proceed. We may say here, as to the second one, that the exceptional cases in which it is true, are where it is clearly shown that it is more economical to buy, or exchange,

timber for lumber, than to take the timber from the farm, at the time, which the tenant has a right to take for necessary repairs. But this paragraph of answer does not show what was the condition of the timber upon the farm; whether it was such as would improve by being left, or would be depreciating; whether it was young or old, etc. There are no facts given, enabling the court to judge of the questions of law involved.

On the trial of the cause, the plaintiff objected to the testimony of the defendant, Catherine, tending to prove that she built a new barn on the farm, in place of the one burned by lightning. No specific objection was made to its admission, but as the testimony could only tend to prove an act unauthorized by law, and which, *prima facie,* could create no liability on the part of appellant, perhaps the court would judicially take notice of its inadmissibility, on a general objection; but it is not necessary, in this case, that we decide this point. The overruling of the motion for a new trial brings before us the correctness, or otherwise, of the judgment of the court below, on the merits of the cause. We think the court erred.

This case, as presented on the whole record, is within a narrow compass.

The defendant Catherine, appellee here, became tenant for life of the farm and other property, described in the will above mentioned, for the support of herself and three single daughters, during the time they should remain single, and for the payment to each of them of a small sum of money. The farm and stock were productive. They had enabled the defendant, out of the income from them, to support herself and daughters, pay them the sums of money bequeathed to them, keep the farm in repair, and, in addition, to loan out a handsome surplus. The barn on the premises was burned down by the act of God. It became necessary, for her own convenience, on account of the large amount of stock, consisting of horses, cattle, etc., to rebuild the barn. She did

so out of the surplus income of the farm, over and above what was required for her support, and that of her daughters, and the making of the repairs on the farm. She had enjoyed the use of the barn, when this cause was tried, about twenty years, and, for aught that appears, may be still enjoying the use of it.

And the main question in the case is, has she now, at this late day, under these circumstances, a right to reimburse herself the cost of building that barn, by committing waste upon the inheritance?

The reversioner was not bound, by the law, to rebuild; and, as the barn was destroyed by the act of God, the tenant for life was not bound to rebuild it. She was bound to keep in repair the buildings, fences, etc., on the estate when it came to her possession, with one exception. The exception was where a building, as in this case, should be destroyed, not by the act or carelessness of the tenant, but by the act of God. In such case, the tenant has no right to take timber from the estate, to its injury, to rebuild, on the ground of its compensating the injury by equal benefit, because this would be allowing the tenant to force the reversioner to submit to the judgment and will of the tenant, in a matter touching his estate, which might not be in accordance with his own. The tenant holds by gift, and has no rights to exercise by virtue of a contract.

But, on the second question in the cause, there are some cases which hold, that, for the purpose of making repairs which the tenant is bound to make, and has the right to take timber from the premises to make, the tenant may cut the necessary timber upon the estate, and exchange it for boards, etc., with which to make the repairs, "provided this be shown to be the most economical mode of making the repairs."

Judge Story, "in a hard case," appears to have made the exception to the general rule. *Loomis* v. *Wilbur*, 5 Mason, 13; *Sarles* v. *Sarles*, 3 Sand. Ch. 601.

But, to make improvements which it is not the duty of the tenant to make, he may not commit waste upon the inheritance, and justify it on the ground that the benefit compensates the damage. *Clarke* v. *Cummings*, 5 Barb. 339; *Sohier* v. *Eldredge*, 103 Mass. 341, on p. 351; *Smith* v. *Jewett*, 40 N. H. 530; 1 Washburn on Real Prop., (4th ed.) p. 123; 4 Kent, p. 77; Taylor Landlord and Tenant, sec. 449, *et seq.*

In this case, the barn was built for the convenience of the tenant for life. It was necessary to the proper care and management of her large quantity of stock. It might be regarded as necessary for her support, within the meaning of the will; and, being so, it was strictly proper that she should build it, and strictly right that she should pay for it, out of the income of the farm, but not by committing waste upon it.

The judgment is reversed, with costs. Remanded for further proceedings in accordance with this opinion.

Howk, J., having been of counsel in the above cause, was absent.