Outcalt *v.* Appleby.

JULIA P. OUTCALT

| 36 | 73 |
|----|----|
| 56 | 115 |

*v.*

JACOB CHARLES APPLEBY et al., executors and trustees, et al.

A testator gave $5,000 to each of his children who should survive him, payable at the end of one year after his death, deducting therefrom any moneys due from any child or the husband of any daughter, as shown by his books of account, which were to be conclusive evidence of the fact and amount of such indebtedness "for all purposes under the will," and, if not paid, then to be retained by the. executor from such delinquent's income, which was payable under a subsequent provision in the will. The net income of the residue was to be paid equally to the sons and daughters during their lives, with remainder to their children. The executors were also empowered to erect buildings, at their discretion, on designated lots of land in New York city, and on certain other lots there with the consent of the majority of the children then living.—*Held,*

(1) That each beneficiary of the residue was, after deducting the debt payable from that share, entitled to the net income thereon from the date of testator's death.

(2) That the debts due from the children or the daughters' husbands bore interest, and that the amount of such indebtedness was not limited to the amounts severally charged in the testator's books.

(3) That the appreciation in value of the unproductive property while awaiting a satisfactory sale by the executors, was a part of the *corpus* of the estate, and not of the income.

Outcalt *v.* Appleby.

(4) That the cost of extensive repairs of the buildings, made in order to secure a better class of tenants and increased rents, must be paid out of the income.

(5) That the claim that interest should be allowed to the life-tenants on the moneys of the *corpus*, used in building new houses, to be computed from the time when the moneys were expended until the time when the houses were completed, could not be admitted.

(6) That ordinary taxes and expenses of improved lands must be paid out of the income, while assessments for permanent improvements may be equitably apportioned between the life-tenants and remaindermen.

(7) That the residuary estate, being held by the executors on a continuing, active trust, should not be divided even if a partition might appear practicable.

(8) That a reference would not be ordered to ascertain whether any more buildings ought to be erected in the state of New York, on the ground that it may be held that the will creates an unlawful estate under the laws of New York; the reference being unnecessary.

(9) That the unproductive land ought not to be divided, but an inquiry as to the propriety of the executors selling it, or any part of it, may be ordered.

(10) That no income from the residuary estate can be paid to beneficiaries until the debts to the testator charged on their shares are satisfied or secured.

Bill for construction of will and an account and directions to the trustees. On final hearing on bill and answers.

*Mr. R. Wayne Parker* and *Mr. C. Parker,* for complainant.

*Mr. John Linn,* for the executors.

*Mr. T. N. McCarter,* for the remaindermen.

THE CHANCELLOR.

Leonard Appleby, late of this state, died March 17th, 1879, leaving a will dated March 2d, 1871, and a codicil thereto, dated May 23d, 1877. By the eighth section of the will he gave to each of his sons and daughters who should survive him $5,000, to be paid at the end of one year after his death, and provided that if either of them, or the husband of either of his daughters, should be indebted to him at the time of his decease, according to his books of account, which were to be conclusive evidence of the fact of the indebtedness and of the amount thereof, for all purposes under the will, such sum of $5,000, or

Outcalt *v.* Appleby.

so much thereof as should be required to pay such indebtedness, should be retained by his executors, and applied to the payment of such indebtedness, or on account thereof, if the indebtedness should be greater than the $5,000. And in the latter case he authorized and directed his trustees, or their successors, unless the amount of the indebtedness should be paid or secured to their satisfaction, to retain the income of the son or daughter so indebted, or of the daughter whose husband should be so indebted, arising out of the trust estate created under the tenth section of the will, and apply it to the payment of the indebtedness, until the several debts should be fully discharged. By the ninth section he makes certain provision for grandchildren, and by the tenth he gives the residue of his whole estate to the executors in trust, to receive the rents, issues and profits, dividends, interest and income, and, after deducting all necessary and proper charges and expenses, to apply the net income, one-seventh to the use of each of his seven sons and daughters for life, free from creditors, and, as to his daughters' shares, free from all rights, claims or interference of their husbands; and on the death of the beneficiaries for life, to pay the shares to their respective issue, with contingent limitation over. By the fourteenth section he empowers his executors, at their discretion, to build on certain lots of land in the city of New York, and, with the consent of the majority of his children living at the time, to build on other land there. By the codicil, among other things, he gives two of his daughters $8,000 each, and to the other, the complainant, $4,000, and provides that those sums are not to be paid by his executors until the indebtedness of his daughters' respective husbands to his estate shall be fully paid.

NOTE.—A life-tenant must bear and pay the costs of repairs to the premises, taxes, assessments &c., *Holcombe* v. *Holcombe, 2 Stew. Eq. 597, note; Garland* v. *Garland, 73 Me. 97; Wheeler* v. *Addison, 54 Md. 41; Miller* v. *Shields, 55 Ind. 71; Benagh* v. *Turrentine, 60 Ala. 557; Carter* v. *Stookey, 89 Ill. 279; Graves* v. *Cochran, 68 Mo. 74.*

Debts charged in a testator's account-book, and referred to in his will, are not conclusive, *Donnay* v. *Borradaile, 10 Beav. 263; Hoak* v. *Hoak, 5 Watts 80;* see *Lawrence* v. *Lawrence, 4 Redf. 278, 7 Hun 641, 68 N. Y. 108; Fellows* v. *Little, 46 N. H. 27; Sims* v. *Sims, 39 Ga. 108; Shawhan* v. *Shawhan, 10 Bush 600.*—REP.

Outcalt *v.* Appleby.

This suit is brought by one of his daughters against the executors and trustees (the same persons) under the will for an account of the estate, and of their transactions therein, and a statement of the accounts between the testator and his children and sons-in-law, and for the marshaling of the last-mentioned accounts, and for special directions to the trustees in the management of the estate. The cause is brought to a hearing on the bill and the answer of the executors and the formal answers put in for infant defendants. No adjudication of any of the matters submitted, where the decision in anywise depends upon the facts, would be warranted as affecting the rights of the infant defendants, seeing that there is no proof in the case as against them. Only such of the questions discussed as may be properly decided without regard to the particular facts outside of the will, or the decision of which will not be controlled by such facts, will, therefore, be passed upon.

The complainant asks that it be decreed that there be an account, and that the court further adjudge, as hereinafter stated in the several propositions mentioned and considered. That there should be an account is admitted, and the executors and trustees join in the submission of matters in controversy, in regard to the management of the estate, to this court.

The first proposition is, that the person to whom the income of a share of the estate is given by the will is entitled to the net income of the whole of the share from the death of the testator, subject only to the deduction of the debts due the testator from him or her, or, if it be a daughter, from her husband. It is the rule that where the residuary estate is given to a legatee for life, the interest which accrues thereon from the time of the death of the testator, shall, in the absence of any direction to accumulate or any other direction to the contrary, and if not required for the payment of debts or legacies, go to the life-tenant. *2 Roper on Leg. 1322 ; Green* v. *Green, 3 Stew. Eq. 451.* In this case there is no direction to accumulate, nor any other direction against paying to the life-tenants the interest from the testator's death, except that which relates to the payment of debts of the legatees

and the husbands of the daughters, and therefore, if the interest is not needed for the payment of the testator's debts or legacies,. the tenants for life will be entitled to it from the time of the testator's decease, subject to the application thereof, if needed for the purpose, to the payment of debts due the testator from the legatees or the husbands of the daughters, according to the provisions of the will.

The second proposition is, that those debts do not bear interest. It is true that advancements do not bear interest, but debts do. That the debts in question are not to be regarded as advancements, is evident from the fact that the testator, by the will and codicil, not only calls them debts, but provides that on the payment by either of his daughters of the indebtedness of her husband to his estate, the debt shall be the property of the daughter. And he also provides that his executors may, if they deem it advisable, proceed to collect the debts, notwithstanding the provision made by will for the payment of them. The decree will not adjudge that the debts in question do not bear interest.

The complainant insists that the amount of indebtedness chargeable against the children cannot exceed the amount charged against them in the testator's books. This proposition is based on the provision in the eighth clause of the will, that the testator's books of account shall be conclusive evidence of the fact and amount of indebtedness, for all purposes under the will. But the testator evidently intended, by this language, that his books should be accepted as conclusive as against his sons and daughters and the husbands of the latter. His language in the rest of the clause gives no support to the idea that he intended to forgive, or leave out of account in connection with his gifts under the will, all debts, both of his children and the husbands of his daughters, which might not appear on his books, but leads to the contrary conclusion. And in the eighth clause of the codicil, where he refers to the indebtedness, and provides that the moneys thereby given to his daughters shall not be paid to them until the indebtedness of their respective husbands to his estate shall be fully paid, he does not limit or confine the indebtedness to the charges on his books, or in any other way. Again, it is

Outcalt *v.* Appleby.

quite clear that there might have been, as it is admitted there was, in fact, in the case of the complainant's husband, contingent liabilities on the part of the testator as surety, which could not justly be charged by him on his books against his children or sons-in-law as debts, but which after his death became such. He undoubtedly intended to provide for indemnity to his estate for any money he might be compelled to pay on account of any such liability.

The third proposition is, that the appreciation in value of the unproductive property held by the trustees in the exercise of their discretion, with a view to getting a satisfactory price therefor, shall be regarded as income and not as part of the *corpus* of the trust estate. There is nothing in the will to authorize the making of such a decree, and sound principle forbids it. The unproductive property constitutes part of the trust estate to be managed, and the whole estate is to be husbanded for the benefit of all the beneficiaries, the remaindermen as well as the life-tenants. The trustees are vested with a discretion as to the time when the conversion of the property, unproductive as well as productive, into money is to take place, and the life-tenants are no more entitled to have the appreciation in value of the one than of the other description of property regarded as income. The appreciation in either case is part of the *corpus*.

The fourth proposition is, that extraordinary repairs to buildings, necessary to put them into a tenantable condition, are to be charged to the *corpus* of the fund and not to the income. It appears, from the answer, that the buildings on which the repairs in question were made were all of them, except one, wholly or partially occupied by tenants at the time of the testator's death, and the repairs were necessary in order to secure a better class of tenants for them, and therefore to increase the income derivable therefrom; that the repairs were not, in fact, in the judgment of the trustees, extraordinary in their character, and can only be so called in view of the extraordinary extent to which the buildings were in need of what are called ordinary repairs; that the immediate effect of the repairs was that higher rents and a better class of tenants were obtained; that in many in-

Outcalt *v.* Appleby.

stances the rentals of the buildings were more than doubled by reason of such repairs, and that in the opinion of the trustees, the increase of income will be sufficient to repay to the life-tenants, in a very short time, the expense of the repairs, with interest. Where real estate is settled in trust for a tenant for life with remainder over, the expenses of the substantial repairs to the estate must be defrayed out of the interest of the tenant for life in possession. *Hill on Trust. 606.* In *Nairn* v. *Marjoribanks, 3 Russ. 582,* a suit for administration of the trusts of a will, the tenant for life alleging that the roof of the mansion-house was constructed on a bad principle, and that unless it was removed and replaced the house would sustain considerable injury, applied for a reference with a view to payment of the cost of removal and reconstruction of the roof out of the *corpus* of the estate. Lord Eldon refused the reference, saying that if the master should report that it would be for the benefit of all parties that improvements should be made in the mansion-house, he would not confirm the report. And in *Hibbert* v. *Cooke, 1 S. & S. 552,* V. C. Sir John Leach refused to direct an inquiry as to the expenses incurred by a life-tenant in repairs to the mansion-house rendered necessary by the dry rot. It does not appear in the case in hand that anything has been done by the trustees in the way of repairs, which was not of such a character as to be a just charge on the income.

The fifth proposition is, that interest should be allowed to the life-tenants out of the *corpus* on all moneys used in the building of new houses; such interest to be computed from the time of expending the moneys to the time of the completion of the houses. The will authorizes and empowers the trustees to build houses on certain lots of land in the city of New York at their discretion, without the consent of the testator's children, and on certain other lots there with their consent. The obvious effect of such building is to make that which was unproductive property, productive. There is not only nothing in the will to justify the charging of the estate in remainder with interest on the money used in making the authorized improvements (and in principle such charge would be clearly unwarranted), but the tes-

tator, by a provision contained in the clause which authorizes the making of the improvements, evinces his intention that no such charge shall be made unless the moneys be taken from certain funds ; in which case he provides that interest shall be paid to the funds from which the moneys may be taken.    By that provision he authorizes the trustees to use for the building of the houses all or any part of the trust moneys in their hands belonging to the trust under the residuary clause, and in their discretion to advance and use any moneys in their hands held in trust under any of the other clauses of the will, but provides that if they shall use any of the last-mentioned moneys, the amount used shall be treated as an advance and loan to the trust created by the residuary clause at interest payable semi-annually, and constitute a lien on the property held under that trust; such lien, however, not to affect the title to the land in case the trustees shall decide to sell and convey it free from the lien.

The sixth proposition is, that the taxes and expenses of unimproved lands should be paid out of the principal of the fund, and not out of the income.

While the unimproved property remains unconverted, all the ordinary taxes and expenses are to be paid out of the income derived from the rest of the estate.    The tenant for life is bound to pay ordinary taxes and expenses.    As to assessments for improvements which go to the benefit of the inheritance, such probably would not be the rule, but some equitable method of apportionment between the income and *corpus* would be adopted. Here, by the trust, all the residuary property, improved and unimproved, is given for the benefit of the life-tenants, and on conversion they will be entitled to the rents and profits, of course, to the exclusion of the remaindermen.    The trust estate must be dealt with in the respect under consideration as a whole. The trustees, in view of the interest of the life-tenants (the obligations of the trust also prohibit them from doing so), could not relinquish the unimproved property to the remaindermen, but must hold it for the benefit of both.    Moreover, it may be remarked, the testator, in speaking of the residuary estate, treats it as a whole.    He gives to the life-tenants the net rents, issues

Outcalt v. Appleby.

and profits thereof, after payment of all necessary and proper charges and expenses. The delay in making the conversion is presumably for the interest of both parties, but should the trustees abuse the discretion given to them, this court is open to the beneficiaries to hear their complaint and redress their grievances.

The next proposition is that the residuary estate should now be divided, as far as practicable, into seventh parts. The object in seeking such partition is to individualize the respective interests of the life-tenants, with a view to identification, so that each may bear only its own share of the burdens and reap its own share of the benefits. That such division would be productive of inconvenience is obvious from the fact that there is a power, as yet unexercised, but which may hereafter be used, dependent for its exercise on the concurrent judgment of the trustees and that of the majority of the testator's living children, which may require the expenditure, in improvements, of moneys held in trust under the residuary clause. Reference is now made to the provision for the improvement, by erecting buildings thereon, of the ten lots of land at and adjoining the corner of Sixth avenue and One Hundred and Sixteenth street, in the city of New York. Moreover, the testator evidently did not contemplate a division of the residuary estate as now proposed. By the fifteenth clause of the will, he provides that on the death of either of his children, his trustees may either convert the unsold real estate, in order to ascertain and pay such child's share to those who shall then be entitled to receive it, or, having ascertained by arbitration the value of such real estate, may pay the value of the child's share therein and retain the real estate unsold for the benefit of the trust. He evidently contemplated that the trust would continue as a family arrangement *in solido*, except as from time to time shares might be paid over as his children should die; and to this end he provides by the sixteenth section of the will for the keeping up by his children themselves of the succession of the trustees, and for the acceptance by a majority of them of the resignation of a trustee and the settlement and adjustment of his accounts. By the thirteenth section of the will, he expresses his wish that the trustees hold

6

the improved property unsold for ten years from his death (until 1889), unless, in their judgment, it would not be advisable to do so. Further, it may be added, it does not appear that such partition is at all practicable.

The next proposition, the eighth, is that inquiry be made as to how far the personal assets can properly be invested in building in the city of New York.

The will defines the extent of the power given to the trustees to build on the land of the residuary estate in New York. As to fourteen lots which it specifies, they may build on them at their discretion; and as to ten others, also specified, they cannot do so unless the majority of the testator's children living at the time shall consent to it. It seems quite clear that there is no necessity for a reference on this point. It was suggested, however, on the hearing, that there may be prudential considerations, based on the possibility that the residuary clause might, if assailed, be held invalid by the laws of the state of New York, on the ground that it creates an unlawful estate, which would induce this court to prohibit further expenditures of the trust-money in building in that state. A reference is not necessary to determine any such question, if it be raised. The court will itself, in the first instance, dispose of it.

The ninth proposition is that there be a reference as to whether the unproductive land should be sold or divided.

It seems clear that such land ought not to be divided among the life-tenants. The interest of those in remainder forbids. The non-payment of taxes by the life-tenants might endanger the estate of the remaindermen, and the latter ought not to be deprived of the care of the trustees over the property while it remains unsold. If assignment by the trustees of the unproductive property in equal proportions to the several shares is what is meant, such division is unnecessary and inexpedient. It is enough to say, however, on this head, that the court will not annul the trust which the will creates as to the property. By that trust the conversion of the property is left to the discretion of the trustees, and they are charged with care of and supervi-

sion over it. There may be an inquiry as to the propriety of selling the unproductive property at this time.

The tenth proposition is that the life-tenants shall have some income on their shares paid to them annually, although their indebtedness, or that with which their shares are chargeable by the will, may not yet be paid.

This proposition is based on the assumption that the testator did not intend that his children should be wholly deprived of income at any time. But such an assumption cannot be justified, for the testator, by the eighth section of the will, expressly directs the trustees to retain the income of his children until the debts which he has charged thereon shall have been fully discharged or secured to the satisfaction of the trustees. He unquestionably intended, as he expressly says, that his children shall not have any income from their shares so long as the debts due from them, or with which their shares are chargeable, shall be unpaid, unless the debts be secured to the satisfaction of the trustees. Moreover, it may be added, none of the children are minors, and it does not appear that there is any necessity for the interference by this court with the plain and explicit directions of the testator. There will be a decree for account, and an inquiry as to the advisability of selling the unproductive real estate.