VAN BIBBER *et al. v.* WILLIAMSON *et al.* MORRIS *et al. v.* SAME. JONES *et al. v.* SAME. MCARTHUR *et al. v.* SAME. MCARTHUR *v.* SAME.

(*Circuit Court, S. D. Ohio, W. D.* March 1, 1889.)

1. EJECTMENT—OCCUPYING CLAIMANTS—ESTIMATE OF IMPROVEMENTS.
   Under the Ohio occupying claimants' law, (2 Rev. St. 1886, c. 10, subd. 2,) which requires that the value of all "lasting and valuable improvements" made on the land shall be paid for in full, such value is not to be ascertained by what the improvements originally cost the claimant, but by the substantial benefit they confer upon the rightful owner, at the date of the commencement of the action.

2. SAME—IMPROVEMENTS BY LIFE-TENANT—LIABILITY OF REMAINDER-MEN.
   Improvements made by the life tenant, or those holding under him, prior to his death, cannot be charged against the remainder-men, who, at the time the improvements were made, were minors, and in no position to interfere or com- plain.

On Exceptions to Report of Special Master.

*King, Thompson & Maxwell,* for plaintiffs.

*R. A. Harrison, F. C. Goode,* and *A. H. Gillett,* for defendants.

JACKSON, J. Consolidated causes pending on exceptions to the report of special master, filed herein January 2, 1889, upon the subject of last- ing and valuable improvements, which defendants have placed upon the lands or several tracts recovered by plaintiffs.

Aside from certain clerical errors or mistakes in the commissioners' re- port, which counsel at the hearing agreed should be corrected, the ex- ceptions taken by the several defendants to the report relate chiefly to alleged excessive charges of rent against them respectively, and the fail- ure to allow them larger amounts for improvements. The plaintiffs' ex-

ceptions relate mainly to the allowance made defendants for clearing lands, for fencing, wells, draining or ditches, and fruit trees. These exceptions on the part of plaintiffs and defendants are too numerous to notice and comment upon in detail. After a careful examination of the report, in connection with the evidence taken before and submitted by the commissioners, the court is of the opinion, and so holds, that the exceptions filed by the several defendants are not well taken, and should be disallowed.

The allowances made defendants by the report for improvements, and plaintiffs' exceptions thereto, present questions of more difficulty. The court gave no special direction as to what improvements should be allowed for, or as to the time or mode of making the valuation thereof. In rendering its judgment the court held that the defendants in these actions at law were entitled to the benefits conferred by the law of Ohio upon occupying claimants, and, in conformity with the Ohio statutes on the subject,[1] directed "that a jury of twelve men be selected, as provided by law for the selection of juries, to try causes in this court, to whom shall be referred to ascertain and report to this court, upon all matters referable to a jury, under the occupying claimant's law of this state; rents, taxes, and assessments only excepted,"—said rents, taxes, and assessments having by consent of parties been specially referred to the clerk of this court for ascertainment and report. Instead of proceeding by jury to ascertain the character and value of the improvements to be allowed defendants respectively, the parties, by agreement, selected certain special commissioners to perform said functions. These specially selected commissioners, after making partition of the several tracts, as to which there is no complaint on either side, state, in reference to lasting and valuable improvements, that they have experienced much difficulty in arriving at satisfactory conclusions as to the character and quality of the improvements proper to be included in this estimate; that this difficulty arose from the absence of specific instructions on that subject in the decree "and the vague and somewhat contradictory nature of the decision of our state courts;" and that the difficulty as to the quality of the improvements grows out of the lapse of time since the date of bringing the suits, that date being fixed as the time at which the value of such improvements were to be estimated. The commissioners were certainly entitled to more definite instructions than were given by the court, and such as the court would have given the jury had one been selected as contemplated by the order directing the selection of a jury to pass upon the matters involved. It is hardly to be supposed that the occupying claimants' law of the state contemplated action and findings by a jury on the subject of improvements of a lasting and valuable character, according to their own ideas, without direction and instruction from the court. The commissioners have very properly, therefore, called attention to the difficulties under which they labored in making their investigations; and they could with propriety have called upon the court for

[1] 2 Rev. St. 1886, c. 10, subd. 2.

instructions on the matters referred to them, before proceeding without directions. Neither the report of the commissioners, nor the evidence produced before them, shows the value of the improvements made by defendants at the date plaintiffs commenced their actions herein, viz., April 18, 1879. The evidence and the report undertake to state simply what the improvements originally cost defendants. What additional or enhanced value those improvements gave to the land recovered by plaintiffs at the date of commencing those suits, nowhere appears. It is argued by counsel for defendants that certain Ohio decisions, to which the attention of the court is called, sustain the proposition that the occupying claimant is entitled to an allowance on the basis of what the improvements cost him, rather than the enhanced value such improvements have given to the property recovered by the rightful owner. But, as the court reads those Ohio cases, they hardly sustain that broad proposition. Other decisions of the same court announce the rule, that the occupant should be allowed for all improvements honestly made that are beneficial to the successful claimant. It may not be easy to reconcile those decisions, but the latter seem to us to state the correct principle, and give to the statute the correct meaning. The "lasting and valuable improvements" which the *bona fide* occupant has made in the honest belief of his ownership of the land, and for which he is to be compensated, manifestly refer to that class and description of improvements which give lasting enhancement to the value of the property, and which benefits and advantages the rightful owner will enjoy when he regains possession thereof. It seems to us, from a careful examination of the statute, and of the Ohio decisions upon the subject, that the occupying claimants' law aimed to embody and apply to actions at law for the recovery of real estate the equitable principle enforced by courts of equity in cases calling for its application, that the true owner seeking relief against a *bona fide* possessor, who in good faith has made lasting and valuable improvements beneficial to the estate, must do equity, which is fully done and met when the occupant is awarded compensation to the extent of the benefits which the real or rightful owner will receive from such improvements.

It does not appear from the report of the commissioners, or from the evidence introduced before them, that the lands set apart to plaintiff have been enhanced in value to any extent by the improvements for which allowance has been made defendants in the report; nor does it appear that plaintiffs have or will derive benefits or advantages equal to the amounts allowed defendants for such improvements. It does not, in fact, appear that defendants' improvements for which compensation is awarded will confer any benefit or advantage upon either plaintiffs or their lands. It is shown in one instance that plaintiffs are charged $15 per acre for clearing land, the timber from which was sold by the occupant at about $9 per acre. But aside from this, the rule of allowing the cost of such improvements, rather than the added value thereby given to the land in a way to benefit the rightful owner, is not sound in principle and is not, in our opinion, a proper construction of the Ohio occupying

claimants' law.   It cannot be properly urged, as suggested by counsel for defendants, that the cost of improvements is *prima facie* evidence of the added value to the property on which the same are made.   Besides, in the present case it does not appear when the improvements for which defendants claim and are allowed compensation were made.   For aught that appears, they may have been made long before plaintiffs' right of action or right to actual possession of the land accrued, and the cost of making them would in no fair or just sense represent the substantial benefit conferred upon the owner, which, *ex æquo et bono*, should be the measure of his liability to make compensation.

The will of Gen. Duncan McArthur was duly probated, and all parties dealing with his children and the lands therein and thereby devised had constructive notice of its provisions in favor of the present plaintiffs, as held by the supreme court in *McArthur* v. *Scott*, 113 U. S. 340, 5 Sup. Ct. Rep. 652.   The proceedings to set aside that will were a nullity as to plaintiffs, and in no way affected their rights, as held in the same case. Allen C. McArthur, the life-tenant of the lands in question devised in remainder to the plaintiffs or his children, departed this life on April 21, 1858.   At the date of his death all his children entitled to the remainder-interest were minors.   The youngest of these surviving children, Allen C. McArthur, reached his majority on March 4, 1875.   Now, improvements made by the life-tenant, or those holding or claiming by, through, or under him, prior to his death, could not, upon well-settled principles, be charged against the remainder-men, who were minors, and in no position to interfere or complain.   Nor does the Ohio occupying claimants' law cover or embrace such a case.   It follows, as we think, that defendants must be confined to improvements of a lasting and valuable character which they or those under whom they claim have made upon those portions of the lands allotted to plaintiffs in the partition since March 4, 1858, when plaintiffs' right to possession and beneficial enjoyment accrued.   By arrangement between the parties and the commissioners, no account has been taken of the improvements made on those portions of the lands which, under the partition, have been allotted and assigned to the several defendants respectively.   It is not, therefore, necessary to refer to those improvements.

The question in respect to the improvements made upon the lands set apart and allotted to the plaintiffs under the partition (which is not excepted to, and should be confirmed) are two, viz.:   *First,* what improvements of a permanent or lasting and valuable character have the several defendants, or those under whom they claim, made upon the several parcels of land allotted to plaintiffs since the 4th day of March, 1858; and, *secondly,* what enhanced value did such improvements give to that portion of the land in April, 1879?   In other words, what benefit or advantage were such improvements to the rightful owners of the land on April 18, 1879?   Plaintiffs' exceptions to the report are accordingly sustained; and in respect to the matters relating to said improvements, and covered by said exceptions, the report of the commissioners is set aside. In all other respects it is confirmed.

If the parties, with the material now before them, cannot adjust the questions relating to the character and value of the improvements to be allowed for as of the date April 18, 1879, in conformity with the foregoing principles and directions, those matters will be referred back to the commissioners, with directions to ascertain and report as soon as practicable the compensation to be allowed defendants according to the rule and upon the basis herein announced.

One of the counsel for defendants has in his brief called the attention of the court to the fact that John Rathburn, one of the original defendants, died before the trial of the case, intestate, leaving adult and minor heirs, who have not been made parties. This should be looked to and disposed of before judgment is finally entered on the reports.

The various motions of several defendants are disallowed. The costs incident to the exceptions will be taxed against the defendants, respectively. The costs connected with the partition will be equally divided between the plaintiffs and the several defendants between whom and the plaintiffs such partition has been made. The costs incident to the commissioners' report upon the accounts for rents and improvements will await the further order of the court, when the question as to such improvements has been finally settled. All of which is ordered and decreed.