Argued January 29; decided April 1, 1895.

## MOORE *v.* SIMONSON.
[ 39 Pac. 1105.]

1. A PURCHASE OF AN OUTSANDING TITLE BY A LIFE TENANT IN POSSESSION OF LANDS inures to the benefit of the remainder-man, and such tenant will be considered a trustee for him.

2. IMPROVEMENTS BY LIFE TENANT OR TRUSTEE.— A life tenant under a will, who is declared to be a trustee for the remainder-man as to an outstanding legal estate purchased by her, is not entitled to reimbursement for the value of permanent improvements voluntarily made by her on the land, for the estate so purchased inured to the benefit of others as well as

herself, and she must be considered as having made the improvements for her own advantage. Being a trustee, she could not encumber the estate without authority.

3. LIFE TENANT OR TRUSTEE — BETTERMENTS.—A life tenant or trustee is entitled to claim as encumbrances on the entire estate the expense of a street improvement in front of the premises, and the amount paid for an outstanding legal title, bought in the honest belief that it was for the benefit of the estate.

APPEAL from Wasco: W. L. BRADSHAW, Judge.

The purpose of plaintiffs in this suit, Sarah A. and Anna Moore, is to have defendant Anna Simonson, who holds the legal title to the following described premises, to wit: "Beginning at the northwest corner of lot twelve, in block two, Biglow's Addition to Dalles City, Wasco County, Oregon, and running thence in a southerly direction along Washington Street seventy feet; thence in an easterly direction one hundred feet to the west line of lot ten in said block two; thence in a northerly direction seventy feet along the west line of said lot ten to the alley, and thence along said alley one hundred feet to the place of beginning, and being the northern seventy by one hundred feet of lots eleven and twelve, in said block two," declared a trustee as to said premises for all persons taking and to take under the last will and testament of Jonas Whitney. The will, among other things, provides: "I then order and bequeath that Anna, my wife, in case she survives me, do have during her life all the rents and profits of the following real estate owned by me, viz.," (here follows a description of the above and other lands); "and at her death all said land and personal property remaining shall go to and belong solely to my daughter Sarah Moore, and the heirs of her body." A codicil thereafter executed makes the following provisions: "*First*— That after the death of my wife Anna Whitney, I request that the profits and income arising from my estate shall

go to the equal education of the children of my only daughter Sarah Moore, or so much thereof as may be required to educate them in common and higher English branches. *Second*—That I request my said wife Anna Whitney shall during her lifetime appoint a suitable person to act as trustee, and to have the charge of my said estate after her death, and who shall be authorized to carry out the provisions of my last will and testament, including this codicil. *Third*—That I desire that if at any time after the death of my wife Anna Whitney, my said daughter Sarah Moore should need any assistance from my said estate, I request and order that she shall be furnished from my said estate with sufficient means to enable her to live in a comfortable manner during her life. *Fourth*—That I desire and request that after the death of my said wife Anna Whitney, as the children of my daughter Sarah A. Moore become of age, they shall each receive their proportion of my estate, share and share alike." The will was executed August twenty-eighth, eighteen hundred and seventy-one, and the codicil September nineteenth, eighteen hundred and seventy-six. The wife was named as executrix of the will. The testator died in October, eighteen hundred and seventy-six, and his widow, the defendant above named, was shortly afterwards, upon probate of the will, appointed executrix, and has never been discharged. The plaintiff Sarah A. Moore is the daughter of the testator, and plaintiff Anna Moore is the daughter of Sarah, who has seven other children now living, all of whom are minors, to wit, Homer W., Chauncey H., Nathaniel B., William A., Vivian E., Garfield, and Lena Moore. At the date of the death of the testator, he was the owner of the equitable title to the premises above described, through mesne conveyances from Winsor D. Biglow, whose title was derived from the United States, under the act of September twenty-seventh, eighteen hundred

and fifty, chapter LXXVI, commonly called the "Donation Act." The Missionary Society of the Methodist Episcopal Church held the legal title under patent from the United States, but in trust, however, for the testator, and for his use and benefit. On the third day of October, eighteen hundred and seventy-seven, the defendant bought in the outstanding title of the Missionary Society, and took a deed thereto in her own name, paying four hundred and twenty dollars as a consideration therefor. In eighteen hundred and eighty-two the grade of Washington Street in front of the premises was raised from two and one half to five feet, at an expense to defendant of about one hundred dollars, and the buildings situate thereon were raised so as to conform to the grade at an additional expense of about three thousand dollars. During the time the building was being repaired the defendant sold some iron doors therefrom, for which she realized four hundred dollars.

From the testimony it appears that in eighteen hundred and seventy-seven, at the time the defendant bought in the mission title, the property was worth from nine to ten thousand dollars. Mr. D. M. French says the land was worth one thousand dollars, and the improvements nine thousand dollars. Wm. Lord testifies: "I should think the land was worth one thousand dollars and the improvements eight thousand dollars. Whitney claimed it was worth more." The defendant was asked, "What was the value of the property at the time you bought in the mission title?" to which she answered: "I suppose the property was worth perhaps six thousand dollars." She testifies, however, that immediately after she obtained the mission deed she claimed the whole interest in the property, and continued to claim it from that time on, including the time the improvements were made by her, but that prior to the execution of the deed she had only a life estate therein. Dr. H. Logan, who became the

agent of the defendant in eighteen hundred and seventy-eight or eighteen hundred and seventy-nine, and acted as such for her until after the improvements were made, testifies as follows: Question—"State if you know what interest she (defendant) was claiming in this property while you were acting as her agent." Answer—"The net proceeds of all the property, that is, the net rents." Q.—"State whether or not she ever claimed to be the absolute owner of the property during that time to you." A.—"She never did." Q.—"To whom, if any one, did she claim the property belonged?" A.—"To Mrs. Anna Moore, I think it is, and her children. Her daughter and her children, largely the children." Q.—"Do you remember any particular time when she spoke of the property being owned by the persons mentioned?" A.—"In the spring of eighteen hundred and eighty-three, or about the time the improvements were made on the property. I think it was in eighteen hundred and eighty-three, I cannot say for certain." Q.—"Can you explain in what connection she made the claim?" A.—"Referring to the improvements on the property, she spoke of it as being in the end going to Mrs. Moore and her children. The money in making the improvements was borrowed from French and Company, and the note was signed by Mrs. Whitney, A. B. Moore and wife. I think the amount was two thousand dollars, she having some money in her name which was also expended on the improvements, which came from rents of buildings and farm." Mrs. Sarah A. Moore also testifies that her mother, the defendant, claimed only a life estate in the premises up to the time she was married to Simonson, which was some time after the improvements were made. The court below decreed that the defendant holds the legal title to said premises, but in trust for all persons taking and to take under the

27 OR.—16.

will of Jonas Whitney; that two thirds of the amount paid
the Missionary Society in buying in its outstanding title,
to wit, two hundred and eighty dollars, plus three thou-
sand dollars expended on the buildings, less the sum of
four hundred dollars received from the sale of the iron
doors, leaving a balance of two thousand eight hundred
and eighty dollars, was a charge upon the estate; and
that, upon the payment of said sum by plaintiffs, the de-
fendant shall convey said premises to them, and to said
minor children, by a good and sufficient deed, subject to
the life·estate of the defendant, in accordance with the
last will and testament of said Jonas Whitney. From this
decree both parties appeal.                Modified.

For plaintiff there was a brief by *Messrs. Carey, Idleman,
Mays and Webster,* and an oral argument by *Mr. Franklin
Pierce Mays.*

For defendant there was a brief and an oral argument
by *Mr. Alfred S. Bennett.*

Opinion by Mr. Justice Wolverton.

1. It may be remarked while passing that the de-
fendant held not only the life estate to the premises under
the will of Jonas Whitney at the time she purchased the
outstanding mission title, but she occupied the position
of a trustee in respect to said premises, the owners of the
remainder under said will being the *cestuis que trustent.*
She was then executrix of the estate, and had served as
such scarcely a year, and was also in possession collecting
rents. Ewing, J., in *Bowling's Heirs* v. *Dobyn's Administra-
tors,* 5 Dana, 446, says: ''It is certainly true, as a general
proposition, that if a trustee, mortgagee, or tenant for
life, being in possession, purchases in an outstanding title

or encumbrance, he cannot apply it to his own benefit; but it in general inures to the benefit of him under whom he entered, or is considered as held in trust for the *cestui que trust,* mortgagor, or him in reversion or remainder." Or, as stated by BIBB, C. J., in *Morgan's Heirs* v. *Boone's Heirs,* 4 T. B. Mon. 297 (16 Am. Dec. 153): "It is a general principle that if a trustee, mortgagee, tenant for life, or purchaser, gets an advantage by being in possession, or behind the back of the party interested, and purchases in an outstanding title or encumbrance, he shall not use it to his own benefit, and the annoyance of him under whose title he entered, but shall be considered as holding it in trust." See also *Holridge* v. *Gillespie,* 2 Johns. Ch. 33; *Whitney* v. *Salter,* 36 Minn. 103 (1 Am. St. Rep. 656, 30 N. W. 755); *Daviess* v. *Myers,* 13 B. Mon. 511; 1 Washburn on Real Property, 96. There is but little doubt that the defendant purchased this title with her own funds. They came out of the rents and profits which were rightly hers under the will, or else were derived from the personal property which she was also entitled to after the payment of debts and the expenses of settling the estate. However this might be, a court of equity may treat the claim as having been purchased for the benefit of those in remainder. In the case of *Bowling's Heirs* v. *Dobyn's Administrators,* 5 Dana, 446, which was a stronger·case for the life tenant than the one at bar, the court say: "And though, after a recovery in ejectment, and before possession is taken, it might be competent for the mortgagee, trustee, or tenant for life to abandon their claims, and take shelter under the adversary claim by purchase, without waiting to be ousted by writ, yet they will, in all such cases, be held to a rigid scrutiny and strict accountability. Slight testimony tending to show that they purchased with the means of the mortgagor, *cestui que trust,* or him in reversion or remainder, or with

the combined means of the latter and the tenant for life, will render the claim so acquired subject to all the rights and limitations over of the original claim. And though a judgment had been recovered in ejectment, and he purchases with his own funds, while he is still in possession, a court of chancery might, perhaps, treat the claim as purchased for their benefit, requiring them to account to him for all reasonable disbursements in its acquisition." In that case the life tenant was executrix of the estate, as in this, and the court concluded that her purchase was in trust for the remainder-men. Here we have a life tenant and an executrix of the estate in full possession purchasing the outstanding title, which she now declares was negotiated as an individual investment, intending thereby to become the absolute owner thereof unencumbered with any trust obligations. The testimony is so strong, however, that she never claimed more than a life · estate in the premises until a comparatively recent date, admitting all the while that Mrs. Sarah A. Moore and her children were entitled to the remainder after her estate had terminated, that we are convinced that she had a more equitable purpose in view when she made the purchase, and that she in reality intended the title to inure to the benefit of her child and grandchildren, as well as that of herself. The property was worth at the time of purchase from nine to ten thousand dollars. She admits it to have been worth six thousand, and yet she purchased the title under which she claims the fee for four hundred and twenty dollars, so that the subsisting equities are strongly against her present contention. Hence we think her purchase of the mission title ought now to be regarded as having been made, as she originally intended it, for the benefit of the devisees under the will of her former husband Jonas Whitney, and she ought now to be regarded

as holding the legal title to said premises in trust for the beneficiaries under said will.*

2.  The defendant claims, however, that if she is held to be a trustee she ought to be allowed a fair proportion of the amount expended by her in the purchase of the outstanding title and in making permanent improvements, upon the ground that she made such expenditures from her own funds, believing that she was the owner of the absolute title. The rule is established by *Hatcher* v. *Briggs,* 6 Or. 30, that where a purchaser of real property, for full value, at an authorized partition sale, in good faith, and without notice of any infirmity of title, believing it to be good, makes permanent improvements which add to the value of the estate, he is entitled to recover to the extent of such added value, as well as for the amount expended in purchasing his supposed title, where such improvements and purchase price inure to the benefit of the true owners. But the defendant occupies the position of a self-constituted trustee by purchase of an outstanding title which inured to the benefit of others as well as of herself. She undoubtedly believed at the time that she was taking a title without infirmities, but she took it as trustee, and whatever expenditures she made were made in the belief that she was a life tenant only; so she is not in a position to invoke the doctrine applicable to a purchaser in good faith and for value making improvements which add to the value of the premises. Whenever it is once established that a trusteeship exists, then the obligations and duties of a trustee ensue. He will be held to a strict accountability as to the management of the trust estate, and cannot encumber it except in accordance with the powers given by the terms of his trust, by au-

* With the case of *Allen* v. *De Groodt,* 14 Am. St. Rep. 626, (98 Mo. 159,) is an extended note on the subject of the Rights and Remedies of Reversioners and Remainder-men.— REPORTER.

thority of the court, or with the consent of the *cestui que trust;* so that it is difficult to see how the defendant, being a trustee, can claim for the value of improvements on the ground of having purchased an outstanding title without notice of infirmities, when the very purchase itself inured to the benefit of other parties, and the very parties against whom she now claims reimbursement. The defendant is a trustee of the legal title merely by operation of law. Her duties and obligations toward the owners of the estate in remainder are those of a life tenant. As such she is required to keep down interest upon encumbrances, and to keep up repairs, so that those in remainder shall come into their estate after the expiration of the life estate in substantially the same condition as it came to her hands. As a general proposition, if a tenant for life makes improvements upon the premises, he cannot claim compensation therefor from the reversioner or remainder-man, though he is under no obligation to do more than keep the premises in repair, and generally he cannot make repairs or permanent improvements at the expense of the inheritance : 1 Washburn on Real Property, 129; 6 Am. and Eng. Ency. of Law, 882. PAXTON, J., in *Datesman's Appeal,* 127 Pa. St. 359, (17 Atl. 1086, 1100,) says: "It is settled law that the life tenant cannot of his own motion improve the remainder-men out of their estate"; or, as was said in *Van Bibber* v. *Williamson,* 37 Fed. 759, "Improvements made by the life tenant, or those holding or claiming by, through, or under him prior to his death, could not upon well settled principles be charged against the remainder-men, who were minors, and in no position to interfere or complain." See also *Elam* v. *Parkhill,* 60 Texas, 582, and *Miller* v. *Shields,* 55 Ind. 71. The cost of the improvement in raising the stone buildings was about three thousand dollars. This expenditure was entirely, as we have seen, from the funds of the defendant, but it was by

her own volition, with knowledge at the time of the exact relationship which she sustained to the owners of the remainder; so that this expenditure cannot be allowed at the expense of the inheritance upon any ground that we are now enabled to discover.*

3. The expenditure for the improvement of the street should, however, be allowed the defendant. This improvement constituted a betterment, and inured to the benefit of the inheritance, as well as to the life estate, and the cost thereof should be treated as an encumbrance on the whole estate: *Plympton* v. *Boston Dispensary,* 106 Mass. 547; *Cairns* v. *Chabert,* 3 Edw. Ch. 312. In view of the fact that the defendant bought in the outstanding mission title in good faith, believing it to be necessary for the protection of the whole estate, the amount expended therefor should also be treated as an encumbrance. The amount expended for improving the street was one hundred dollars, which, being added to the consideration for the mission title, makes five hundred and twenty dollars. The defendant, by paying this sum out of her own funds, became a creditor of the estate to that extent, deducting the interest she would have to pay as life tenant during her life. It is the duty of the defendant to keep down the interest upon this sum during her life, and of the remainder-men to pay the principal at her death; 4 Kent's Commentaries, 74–75; *Rayburn* v. *Wallace,* 93 Mo. 326 (3 S. W. 482). The rule is well settled by which may be ascertained the relative proportion of the encumbrance to be borne respectively by the life tenant and the owners of the remainder if paid at once or at any given time before the death of the life tenant. The life tenant must pay the present worth of an annuity equal to the annual in-

---

* A valuable collection of authorities on the kindred question of the liability of cotenants for improvements and repairs is printed with the West Virginia case of *Ward* v. *Ward,* 29 L. R. A. 449.—REPORTER.

terest running during the number of years which constitute the expectancy of life, the balance after subtracting the sum thus ascertained from the encumbrance should be borne by those in remainder: 3 Pomeroy's Equity, § 1223, and note 2 at page 213.

There is evidence in the case tending to show that the Missionary Society has agreed to refund to the defendant the four hundred and twenty dollars paid for the mission title, and that a percentage of that amount has been tentered and is now ready to be paid her. When she collects this fund it ought to go toward the discharge of the encumbrance. Plaintiffs seek to have the four hundred dollars which defendant received for the iron doors offset against any claim she may have for expenditures, but this is in the nature of waste, and no claim is made there for under the pleadings, nor was there any evidence offered during the trial showing that she was guilty of committing waste in this respect. She may or may not have committed waste in selling the iron doors, but the evidence is insufficient to determine that question, none apparently having been offered with that end in view. Hence this claim cannot be allowed. The decree will be that the defendant convey to the other devisees of Jonas Whitney the premises in the proportion they would take under the will, reserving to herself the rents, issues, and profits thereof during her natural life, and that the five hundred and twenty dollars be declared an encumbrance thereon, to be discharged by the life-tenant and other devisees, the proportion for each to pay to be ascertained under the rule herein determined. The decree of the court below will therefore be modified in accordance with this opinion.                                    MODIFIED.