Argued October 9, affirmed November 29, 1967

GILFRY ET AL, *Respondents, v.* GILFRY,
*Appellant.*

434 P. 2d 348

*Jack B. Lively,* Springfield, argued the cause for appellant. With him on the brief were A. Duane Pinkerton II and Sanders, Lively, Camarot & Wiswall, Springfield.

*Thomas E. Brownhill,* Eugene, argued the cause for respondents. On the brief were Robert D. Woods and Riddlesbarger, Pederson, Brownhill & Young, Eugene.

Before SLOAN, Presiding Justice, and GOODWIN and HOLMAN, Justices.

GOODWIN, J.

The two children of John Gilfry, deceased, brought declaratory proceedings against his executrix, seeking thereby to impress a trust upon the proceeds of a land-sale contract. The trial court found that a trust existed and the executrix appeals.

The principal questions were questions of fact. In 1935 Gilfry, a widower, conveyed one of his farms to his two grown sons, reserving to himself a life

estate. At the time of the conveyance, the land was for the most part unimproved. In 1940 Gilfry married the executrix. In 1948, after substantial improvements had been made to both the land and the buildings, Gilfry asked his sons to reconvey to him their respective interests in the farm. He requested the deed, the evidence showed, so that if an opportunity to make an advantageous sale of the farm should present itself the sale could be made without delay. This "explanation," perhaps somewhat naive, apparently satisfied all the parties at the time. No sale of the farm was made in 1948, however, and Gilfry neglected to record the deed of reconveyance.

In 1961, Gilfry executed a deed creating a tenancy by the entireties in himself and the executrix with reference to another farm, but made no attempt to create a tenancy by the entireties in the farm in question in this case. In a transaction in which the State Highway Commission bought right of way, Gilfry treated the farm in question as the property of his sons, and they executed the deed. But in 1963, two weeks before executing the contract now in litigation, Gilfry recorded the 1948 deed from his sons.

A few months after executing the contract for the sale of the farm, Gilfry died. He had received and had disposed of the down payment. According to the terms of his will, the executrix became entitled to the net estate, which included in its inventory the landsale contract.

Shortly after Gilfry's death, each of the sons received a letter from the attorneys representing the executrix. On her behalf the attorneys wrote: "Mrs. Gilfry advises that just prior to his death Mr. Gilfry indicated that both sons had an interest in that cer-

tain property described in the accompanying exhibit 'A' which each of you conveyed to the deceased with the understanding that you would be reimbursed in accordance with your proportionate ownerships at such time as moneys were received under that certain land sales contract  *  *  *."

■ While the attorneys later attempted to explain that the letter had been written by them under a mistaken assumption on their part as to the true nature of the agreement between the father and his sons, the trial court had the right to weigh this testimony against the other evidence of a trust and give the letter such value as it was worth as an admission against interest on the part of the executrix. In the context of all the other evidence in the case tending to establish some kind of an oral trust in the proceeds of the sale of the farm, the letter from the attorneys for the executrix is not altogether surprising. After the sale and before Gilfry died, for example, he wrote his sons letters containing such statements as: "When we get the payments you boys will get what is coming to you," and "The only reason you boys redeeded the ranch to me, was so we could sell it without much delay."

The executrix has challenged the trial court's findings and conclusions upon a number of points.

The trial court expressed the opinion that Gilfry had become a trustee of the land for his sons by virtue of the representations made at the time of the reconveyance to him in 1948. The executrix challenges this opinion on the ground that ORS 93.020 (1) specifically prohibits the creation of a trust in real property by parol evidence. But there is no need to consider this question in the case at bar, because the trial

court also found that Gilfry had declared himself a trustee of the proceeds of the sale of the farm after the relevant interests in land had taken on the character of personal property by operation of law through the sale thereof.

■■ An oral declaration of trust made by a grantee after he has converted land into personalty is admissible to prove the existence of the trust, and also permits declarations made by him prior to the conversion to be received in evidence to prove the existence of the trust. *Cooper v. Thomason,* 30 Or 161, 45 P 296 (1896). We are of the opinion that there was sufficient evidence to permit the trial court to find that Gilfry was a trustee holding at least some of the proceeds of the land-sale contract for his sons at the time of Gilfry's death.

The more difficult question concerns the extent to which the executrix should be held accountable under the trust. The trial court held that the sons were entitled to the entire net proceeds of the sale of the farm, and did not allow the executrix to deduct, in her accounting, any part of the value of the property attributable to work and materials furnished by herself and by Gilfry during Gilfry's life tenancy. The trial court treated the case as an "all-or-nothing" contest. The transcript also supports the view that the parties considered the case to be primarily concerned with the existence or nonexistence of a trust and only secondarily concerned with the value of the *res.*

The executrix in her answer had sought, in the event the court should reject her primary defense that there was no trust, credit for some $19,300 in improvements. The evidence, however, apparently did not satisfy the trial court that it would be inequitable to treat the improvements as those of a volunteer.

■ Viewed through the eyes of a widow who had spent some twenty-three years doing the work of a farmer's wife and going without luxuries so that her husband could improve the farm, the result no doubt appeared to be somewhat generous to the sons. The trial court considered itself bound, however, by the general rule that a life tenant ordinarily cannot recover the value of improvements voluntarily made to the remainder. See *Moore v. Simonson,* 27 Or 117, 126, 30 P 1105 (1895). Unless there is an agreement to the contrary, or equities which compel a different result, a life tenant is presumed to have made voluntary improvements for his own benefit. In many cases, a parent will make substantial improvements specifically to enhance a child-remainderman's estate. In any event, there is no reason to doubt that all improvements to the farm in question were voluntarily made by the life tenant.

The pleadings and the evidence established no foundation upon which this court can say, as a matter of law, that the trial court was in error in the relief awarded the plaintiffs.

The record reveals a not uncommon uncertainty on the part of counsel below with reference to the proper "side" of the court in which to try declaratory proceedings. The parties stipulated that it was to be tried as a suit, but the final decision is designated a judgment and decree. Since we have no reason to take a view of the facts different from that taken by the trial court, we need not decide whether the proceeding was "in" equity or "in" law. Cf., *Oregon Farm Bureau v. Thompson,* 235 Or 162, 378 P2d 563, 384 P2d 182 (1963).

Affirmed.