## NATHAN HART, EXECUTOR, *vs.* AARON B. CHASE AND OTHERS.

*R* mortgaged certain real estate, the equity of redemption in which was afterwards set off on an execution against him to a creditor, who conveyed the same to the wife of *R*. She afterwards died intestate. After her death *R* remained in possession, and some time later was required to pay and did pay the mortgage debt. Upon a bill for a foreclosure of the mortgage brought by the executor of *R* against his children, who were also the children and heirs at law of *R's* wife, it was held—

1. That the payment of the mortgage debt by *R* put him in the place of the mortgagee.

2. That there was no presumption of law that the money paid was an advancement to his children, the question being one of intent.

Hart *v.* Chase.

3. That as the payment was an involuntary one, and he had made no charge or memorandum of it as an advancement, but had preserved the note and mortgage among his valuable papers, the conclusion, at which the court below had arrived, that an advancement was not intended, was a reasonable one.

4. That although *R* after paying the mortgage debt had the rights of a mortgagee, yet as he had also a life estate as tenant by the curtesy, he was not chargeable with the rents and profits during the time that he held the property after such payment.

5. That, as it was not for his interest that the life estate should be extinguished, the law would not regard it as extinguished.

6. That if *R* would have been liable for waste as tenant for life, yet he would not be so liable as mortgagee.

BILL for a foreclosure; brought to the Superior Court in Litchfield County. The following facts were found by the court:

Riley Rexford in 1855 was the owner of the land in question, a farm in the town of Cornwall, and made a mortgage of the same to one Ives, and in the year 1858 another mortgage to one Pratt, and afterwards in the same year another mortgage to one Brewster. In the year 1860 Mary A. Hamlin recovered judgment against Rexford for $153.21, and had the equity of redemption in the land set off to her, and soon after conveyed all her interest in the land to Sarah Rexford, the wife of Riley Rexford. She died in 1861, intestate, leaving two daughters, children of Riley Rexford, who with their husbands are the respondents. After the levy of the execution Rexford remained in possession as before and continued in possession till his death in 1874. The petitioner is his executor.

In the year 1866 Rexford was required to pay and did pay the mortgage debts, amounting to about $6,000. On paying them he received no written assignment of the mortgages or mortgage debts, but he preserved the notes and mortgages among his valuable papers. It did not appear that he had ever made any charge or memorandum of the amount paid, as an advancement to his children. The court found that if the law conclusively presumed that an advancement was intended, then it was an advancement; otherwise that it was not an advancement, but for his personal benefit.

The annual rents and profits of the land were found to be

$400. Rexford had also cut wood upon the land from time to time during his occupancy, the value of which was not found; the amount due on the mortgage notes, with interest, was found to be $9,510.33.

On these facts the case was reserved for the advice of this court.

· *G. C. Woodruff* and *A. D. Warner*, for the petitioner.

1. Upon the allegations in the petitioner's bill, which are found true, Rexford was subrogated to the rights of the mortgagees, and is entitled to a decree in his favor. By the levy the levying creditor acquired only the right to redeem on paying the mortgages; and under the conveyance to Mrs. Rexford only that right passed. After the levy Rexford still remained liable personally to pay the notes, if the owners of the equity of redemption did not pay them. He then stood in the relation of a surety, and if he paid the notes he became entitled to all the securities of the mortgagees; and no formal assignment was necessary. 1 Story Eq. Jur., § 637; *Homer v. Savings Bank*, 7 Conn., 484; *New London Bank v. Lee*, 11 id., 112; *Belcher v. Hartford Bank*, 15 id., 382; *Atwood v. Vincent*, 17 id., 575.

2. If it be said that it is to be presumed Rexford intended such payment to be an advancement to his children, we reply, that there must have been some act on his part showing such intent; that none is shown, but the contrary is inferable from the facts found; and no such presumption arises out of the fact of payment and the relation merely. Certainly no such presumption is conclusive. It is a question of intent to be proved. *Quinebaug Bank v. Brewster*, 30 Conn., 560. If not conclusive the court has found there was no such intent.

3. The rents and profits are not to be accounted for, because Rexford was tenant by the curtesy. 1 Swift Dig., 84; *Toby v. Reed*, 9 Conn., 225; *Cooper v. Davis*, 15 id., 556. During the life of Mrs. Rexford he held as her husband; on her death, as tenant by the curtesy; and no change was made in this holding on his paying the notes in 1866.

4. For waste we claim he was not accountable. *Cooper*

v. *Davis,* supra. It has never been decided by this court, that a tenant by the curtesy of the estate of a mortgagor was so accountable.

*D. J. Warner* and *C. B. Andrews,* for the respondents.

1. It will be presumed that Rexford in paying off the mortgage debt intended to make a gift to his children, who owned the equity of redemption. Where a man pays money and the advantage of the payment accrues to his wife or child, the presumption arises that he intended an advancement to the wife or child. As where a man purchases property and takes the title in the name of his wife or child, it is presumed to be an advancement. 1 Perry on Trusts, § 143; 2 Story Eq. Jur., §§ 1202, 3, 4; 2 Sugden on Vendors, 704; *Murless* v. *Franklin,* 1 Swanst., 13, 18; *Partridge* v. *Havens,* 10 Paige, 618; *Lamplugh* v. *Lamplugh,* 1 P. Wms., 111; *Sidmouth* v. *Sidmouth,* 2 Beav., 447; *Mumma* v. *Mumma,* 2 Vern., 19; *Campion* v. *Cotton,* 17 Ves., 267, 273; *Crabb* v. *Crabb,* 1 Mylne & K., 511; *Washburn* v. *Sproat,* 16 Mass., 449; *Warren* v. *Jennison,* 6 Gray, 559; *Whitten* v. *Whitten,* 3 Cush., 191, 197; *Swaine* v. *Perine,* 5 Johns. Ch., 492; *Dickinson* v. *Codwise,* 1 Sandf. Ch., 214; *Vanzant* v. *Davies,* 6 Ohio S. R., 52. From the payment of the notes alone, or from all the facts found in this case, the presumption that Rexford intended an advancement to his children is conclusive. Any presumption, where once it attaches, is conclusive unless rebutted. There is nothing in this case to rebut the presumption which the law attaches to a payment made by a parent for the benefit of a child, that an advancement is intended. *Grey* v. *Grey,* 2 Swanst., 594; *Finch* v. *Finch,* 15 Ves., 50; *Taylor* v. *Taylor,* 1 Atk., 386; *Dyer* v. *Dyer,* 2 Cox, 93; *Skeats* v. *Skeats,* 2 Younge & Col. C. C., 9; *Cairns* v. *Colburn,* 104 Mass., 274; *Edgerly* v. *Edgerly,* 112 id., 175.

2. ' The petitioner cannot have a foreclosure decreed in his favor because neither the debt nor the mortgages were assigned to Rexford. There is no evidence whatever that he intended to become such assignee or that the mortgagees intended to assign. There can be no assignment without an intent on

the part of both the assignor and assignee. And there can
be no intent to assign inferred simply from taking payment.
*Lancey* v. *Clark*, 64 N. York, 209.

3. Payment of these notes by Rexford, the party whose
duty it was to pay, extinguished the mortgage. It is ques-
tionable whether an express agreement between Rexford and
his mortgagees could keep the mortgage alive. Without an
express written agreement clearly the mortgage would be
extinguished. 1 Hilliard on Mort., 473, 535; *Champney* v.
*Coope*, 34 Barb., 539; *Merrill* v. *Chase*, 3 Allen, 339; *Eaton*
v. *Simonds*, 14 Pick., 98.

4. The respondents are entitled to have an account of the
rents and profits of the farm. The petitioner comes into
court in the character of mortgagee alone. If he asks the
benefits of that character he certainly ought not to shun its
burdens.

CARPENTER, J. The petitioner's testator, Riley Rexford,
made two mortgages of his property to secure certain notes
on which he was liable as maker. Subsequently the whole
equity of redemption was set off on an execution against him
to Mary A. Hamlin, who afterwards conveyed her interest
thus acquired to the wife of Rexford. Mrs. Rexford subse-
quently died intestate, leaving the respondents her heirs at
law. Mr. Rexford remained in possession of the property
for several years and was then called upon to pay, and did
pay, the mortgage debts.

This petition is brought to foreclose the equity of redemp-
tion.

We suppose it to be true, indeed it seems to be practically
conceded, that the result of these various transactions was in
effect to put Mr. Rexford in the place of the mortgagees, and
in equity to make the respondents the debtors as between
themselves and Rexford. The respondents' objections rest
upon entirely different grounds. The principal one is that
the payment by Rexford constituted in law an advancement.
Whether an advancement or not is a question of intention.
The court below finds in the alternative, thus: "If from the

payment on said notes it is a conclusive presumption of law that said Rexford intended an advancement to his children, then such advancement is proved.   But if the law does not raise such conclusive presumption, then the object of said Rexford in paying said notes is found to have been, not an advancement to his children, but his own personal benefit." The latter must stand as the true finding.   In that the court correctly treated it mainly as a question of fact, and gathered the situation from the circumstances.

Even if we were to consider this record as presenting for our consideration the question whether, upon the facts stated, there was or was not an advancement, we should unhesitatingly come to the same conclusion.

The circumstances pretty effectually repel the presumption of an advancement.   At the very threshold of the inquiry we find that the payment was an involuntary one.

Advancements are ordinarily, if not always, voluntary. And when a man makes a payment in response to a legal demand and in discharge of a legal obligation, it is a little difficult to extract from such payment any evidence of an intention to make an advancement.   Couple with this the facts that he made no note, charge or other memorandum of the payment, and did not at the time or at any other time declare it to be an advancement, but on the contrary carefully preserved the notes and mortgages among his valuable papers, and the conclusion would seem to be a reasonable one that he did not intend an advancement.   At least no legal principles will justify us in saying that the circumstances afforded a conclusive presumption that he intended an advancement.

The respondents claim that there should be a deduction from the amount found due on account of rents and profits and waste.

It is not contended that Rexford was liable for rents or for waste while in possession of the property as mortgagor, or while holding the equity of redemption in right of his wife merely, whether before or after her death.   But it is claimed that after he paid the mortgage debts he was in possession of the premises as mortgagee, and that as such he was liable for

rents, etc. This claim assumes of course that his interest as tenant by the curtesy then ceased. We do not accede to that view of the case. As tenant by the curtesy of the equity of redemption he had a good title against every one but the mortgagee. The mortgagee could extinguish that title by a foreclosure. After Rexford paid the mortgage debt and stood in the place of the mortgagee he might still retain his title as tenant by the curtesy. The mortgage still subsisted as a valid security. There was therefore the interest of a mortgagee in the property which Rexford held, and there was an equity of redemption, which in this case was owned by the respondents subject to the life estate in Rexford. That life estate however was distinguishable from his interest under the mortgage. It was not for his interest to extinguish the life estate, and, in the absence of any proof to that effect, the law will not presume that he did so.

We must therefore regard Rexford as in possession of the property as tenant by the curtesy. As such he certainly was not liable for rents, and if waste was committed we are aware of no principle which would compel him to account for the same as mortgagee, whatever may have been his liability as life tenant.

We advise the Superior Court that the petitioner is entitled to a decree for the full amount.

In this opinion the other judges concurred.