J. C. WHITNEY, Administrator, *vs.* NANCY SALTER and others.

November 22, 1886.

**Life-Tenant in Possession—Purchase of Incumbrance—Interest of Remainder-man.**—A tenant for life in possession, in the purchase of an incumbrance upon, or of an adverse title to, the estate, will be regarded as having made the purchase for the joint benefit of himself and the reversioner or remainder-man. The law will not permit him to hold it for his own exclusive benefit, if the other parties interested in the estate will contribute their share of the amount paid for the purchase.

**Same—Renewal by Life-Tenant of Leasehold—Interest of Remainder-man—Contribution.**—So, too, if a life-tenant of a leasehold estate, under a renewable lease, renews the lease, the law will make him a trustee for the reversioner or remainder-man. But if, in such cases, the life-tenant pay out money which he was not required to pay, or more than his proportionate share, he becomes, to that extent, creditor of the estate,

and subrogated to the rights of the parties whose claims he has bought or paid off. He, and those claiming under him, occupy a position analogous to a mortgagee in possession after condition broken, and cannot be evicted until all sums due them from the estate have been repaid.

The plaintiff, as administrator, with the will annexed, of Ann Salter, deceased, brought this action in the district court for Hennepin county, to recover the possession of certain real estate, as a part of the estate of his testatrix. On the trial, before *Young*, J., and a jury, it was admitted that in 1877 the owner of the land leased it to Ann Salter for the term of five years, with the right to successive renewals for terms of ten years until the end of 100 years from the date of the lease. Thereafter, and in 1877, Ann Salter died, leaving her husband, William Salter, and children surviving her. In her will she devised the use and occupation of the land in question to her husband for life, in lieu of all estate, right, title, or interest he might otherwise have in her estate. William Salter died in 1886 before the commencement of this action. The estate of Ann Salter is unsettled and undistributed. The plaintiff rested his right to recover upon the above facts.

The defendant offered evidence, which was received against the objections of plaintiff, showing the following facts: Prior to her death Ann Salter, her husband joining, mortgaged the premises. In 1880 the mortgage was foreclosed, and the premises sold to Sampson A. Reed, who conveyed the same by quitclaim deed, on June 1, 1882, to William Salter. In 1879 a mechanic's lien upon the premises was foreclosed by suit against this plaintiff as administrator of Ann Salter, and the premises were sold, under the judgment, to George McMullen, who assigned the certificate of sale, in 1880, to William Salter, who in the same year assigned the certificate to John Steele. On April 21, 1882, the lease was renewed for ten years to William Salter as the assignee and successor in interest of the original lessee. On February 4, 1885, John Steele conveyed the premises by quitclaim deed to William Salter, and on October 30, 1885, William Salter conveyed the premises to Sampson A. Reed, who, on October 31, 1885, by quitclaim deed, conveyed to the defendant, Nancy Salter, who is in possession thereunder. These facts being admitted to be true, the

court directed a verdict for defendant. Plaintiff appeals from an order refusing a new trial.

*J. R. Corrigan,* for appellant.

*Smith & Reed,* for respondent.

MITCHELL, J. The established doctrine is that a tenant for life in possession, in the purchase of an incumbrance upon, or an adverse title to, the estate, will be regarded as having made the purchase for the joint benefit of himself and the reversioner or remainder-man. The law will not permit him to hold it for his own exclusive benefit if the reversioner or remainder-man will contribute his share of the sum paid. If the life-tenant in such case pays more than his proportionate share, he simply becomes a creditor of the estate for that amount. 1 Washb. Real Prop. 96; *Daviess* v. *Myers,* 13 B. Mon. 511. It is also the settled doctrine that, if a life-tenant of a renewable leasehold estate renews the lease, the law will not permit him to do so for his own exclusive use, but will make him a trustee for the reversioner or remainder-man. And this is so, even although he was not required to renew. Bisset, Est. 248. The renewed lease, in such a case, is subject to the same equities as the original. Thus far we agree with the appellant. But this is not the whole law applicable to the facts of this case. Salter, the life-tenant, was under no obligation to pay off or buy up these outstanding claims against the estate. The will under which he held the life-estate imposed no such duty upon him. Neither did the law. 1 Washb. Real Prop. 96.

Whether, in this case, the life-tenant should contribute towards the amount paid to remove these incumbrances is not here important. Undoubtedly the general rule in regard to the apportionment of the contribution towards paying off incumbrances between the life-tenant and the remainder-man is that the life-tenant shall contribute in proportion to the benefit he derives from the liquidation of the debt. Story, Eq. Jur. § 487; 1 Washb. Real Prop. 96, 97.

In view of the fact that this life-estate was given to Salter "in lieu of all estate, right, title, or interest" he might otherwise have in the estate of his wife, the testatrix, there may be some question whether he would be bound to contribute anything towards taking up these outstanding claims against the estate. See *Brooks* v. *Harwood,* 8

Pick. 497. But, as the point is not really before us, we neither decide nor consider it. It is, however, certain, in any event, that Salter became a creditor of the estate for the amount he paid out, less his proportionate share, if any. To that extent he would be subrogated to the rights of the parties from whom he bought, and would be entitled to hold the property until the other parties interested paid their share. He, and those claiming under him, would occupy a position analogous to a mortgagee in possession after condition broken, who cannot be ejected until all sums due on the mortgage have been paid.

Order affirmed.