## THERESA FAULKENBURG AND ANOTHER v. KATHIE WINDORF.[1]

March 29, 1935.

No. 30,221.

[1]Reported in 259 N. W. 802.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Beise,* for appellant.

*Frank J. Danz,* for respondents.

Stone, Justice.

In this action to determine adverse claims to real estate, plaintiffs prevailed. Defendant appeals from the judgment.

Title to a St. Paul residence is the subject of the suit. At his death in 1916 the property was the homestead of Joseph Kaiser. He died intestate, the title descending by statute to his widow, Katharina Kaiser, as tenant for life, with remainder in fee to their two children, plaintiffs herein. It was then subject to a mortgage, placed in 1914, securing an indebtedness of $1,000. Kaiser and his wife, Katharina, had executed mortgage and note; so both were bound for the debt. In 1919 or 1920 Katharina Kaiser remarried. The husband then acquired died shortly afterwards. In 1921 the mortgage on the homestead was foreclosed by advertisement. But the life tenant, the former Katharina Kaiser, made redemption by purchasing the sheriff's certificate of sale.

In 1923 or 1924 (the precise date not appearing) the life tenant again married, this time one Duenwald. Defendant is the daughter of Duenwald by a former marriage. She visited her father and his then wife while they resided on the property. During this first family visit, running over a few days, she learned from the then Mrs. Duenwald of her prior marriages and of plaintiffs, her children, who were then nonresidents of Minnesota. That visit was repeated frequently. Some time before July 30, 1926, defendant had loaned her father, Mr. Duenwald, $840. At the time she took neither note nor other evidence of the debt. Some time afterwards she received by mail at Morris, Minnesota, her place of residence, her father's note for $840, together with a mortgage on the involved property securing the debt. The mortgage was executed by Mr. and Mrs. Duenwald. Defendant had neither asked nor negotiated for this mortgage, or other security. With commendable

frankness, she admits that it came to her as a complete surprise, unaccompanied by any letter of explanation.

In 1931, by advertisement, defendant foreclosed her mortgage. There was no redemption. Shortly thereafter Mr. Duenwald removed from St. Paul to Morris, and from then on resided with his daughter, the defendant. Mrs. Duenwald continued to occupy the premises until January, 1932. She died in February, 1933. Plaintiffs first learned of defendant's mortgage and the foreclosure thereof in December, 1932. Defendant claims under that mortgage and its foreclosure.

■ It was considered below that the life tenant got no claim against the remainder by redeeming from the original mortgage because she was but paying her own debt. So she was. She had signed the mortgage note. There is nothing to indicate whether she ever had any personal benefit from the mortgage loan or whether it was the usual case of a wife's joining her husband in the execution of mortgage papers. It does not appear; but, if the debt was a mere family affair, as between husband and wife, the former was primarily liable. So the question arises whether the naked contractual obligation of the wife to pay the debt deprives her of the right to claim contribution from the remaindermen. There is text authority in support of the affirmative.

"If there was any obligation resting upon the person who paid the encumbrance to discharge it as a debt of his own, he can of course claim nothing from the other, although the latter was benefited by the payment; and on the other hand, if it was the duty of the latter to pay the whole encumbrance, the payment of it by the former gives him, not a right to contribution, but a right to hold the mortgage as a subsisting security against the other part owner; in other words, he is subrogated to the position of the mortgagee." 2 Jones, Mortgages (8 ed.) § 1393.

If that proposition be correct, it means that if in this case plaintiffs, the remaindermen, had made the redemption, they would have been subrogated to the right of the mortgagee as against defendant and her life estate. In order to protect the latter, she would have

had to pay, not a part, but the whole of the mortgage debt. To us that does not seem right, and we shall attempt to show why. First, we note that the only citation supporting the above quotation from Jones on Mortgages is Huber v. Hess, 191 Ill. 305, 61 N. E. 61. That decision does quote the text from Jones. But its application was to a case where the *estate* of the redemptioner was bound, *in rem*, by a charge or obligation to "pay the full amount of the encumbrance" in question. That was [191 Ill. 316] "the character of the devise of lot 10" decisive of the whole question. Of course in such a case, where the title or estate of the redemptioner is bound, *in rem*, by an obligation to pay, or a charge for the payment of, the entire encumbrance, there is absent the equality of equity always prerequisite to contribution. The redemptioner simply removes a special charge upon his own estate and so has no equity whereby to charge the estate of others.

But here we have a case where the estate of the redeeming life tenant was not specially bound, *in rem*, for the payment of the whole encumbrance. The whole estate, including remainder, was charged generally with that obligation. The burden was spread equally over life estate and remainder—one no more than the other being charged. So, if the life tenant is to be denied right of contribution, it must be because she was bound *in personam* and contractually to pay the debt. That does not follow for the simple reason that the original promise to pay was for benefit only of the mortgagee and his assigns. Plaintiffs as remaindermen were neither parties to, nor beneficiaries of, that contract. The surviving wife and life tenant was no debtor to them. Neither mortgage nor mortgage note imposed upon her any duty for benefit of remaindermen.

In respect to such prior encumbrances upon the fee, the respective duties of life tenant and remaindermen are neither referable to, nor regulated by, any theory of contractual obligation. They are of equitable creation and arise solely from the incidence of the involved lien or liens upon the several estates. The adjustment necessary when redemption is made by one is not *in personam* between the redeeming tenant and the others, but *in rem* between

their respective interests. Obligation is not imposed on anyone, but an interest in property is charged with a lien to secure the performance of an obligation. If the duty is not performed, the title subject thereto may be lost. But in no event is any duty imposed *in personam*.

There may be exceptional cases where another tenant is party to, or beneficiary of, a contract binding upon the redeeming tenant in such fashion as to deprive the latter of the right to contribution. But that feature does not characterize the ordinary run of such cases and is absent here. In the typical case (and this one is typical) we repeat that the adjustment to be made is not of obligations of persons, but of equitable charges upon or liens against things; *i. e.* interests in property. Decision is not at all of contractual rights.. It has nothing to do with the allocation of contractual obligations between persons. It is concerned only with the allocation *in rem* of a charge or lien upon the title to property.

That view of the matter renders immaterial the circumstance that the life tenant became joint debtor with her husband for the original mortgage debt. The life estate which she took upon her husband's death was not, as in Huber v. Hess, 191 Ill. 305, 61 N. E. 61, especially charged *in rem* with the payment of the whole debt. It remained no more subject to the lien of the mortgage (and that is the decisive thing) than the remainder. Hence, when the life tenant made redemption, she came into an equity equal to that of the remaindermen and so was entitled to contribution from them.

■ The argument for plaintiffs, that defendant was not a purchaser for value because she took her mortgage as security for a preëxisting debt, puts too much faith on Baze v. Arper, 6 Minn. 142 (220). The rule of that case, that the relinquishment of a preëxisting debt is not valuable consideration, is no longer law. Stevenson v. Hyland, 11 Minn. 128 (198) ; Horton v. Williams, 21 Minn. 187. It is now settled that there is consideration, at least where, as here, the debt was extended as to maturity. E. S. Woodworth & Co. v. Carroll, 104 Minn. 65, 112 N. W. 1054, 115 N. W. 946; 23 R. C. L. 246. A judgment, always for an existing claim, is not questioned for lack of consideration. It would be anomalous to

hold that a mortgage, taken in good faith to secure the same debt, particularly when the latter is extended, could be so attacked successfully.

■ Argument for defendant assumes, erroneously, that, by the record, plaintiffs were charged with notice of the last two mortgages and their foreclosures. It is inaccurate to say that the record of a deed is constructive notice to all the world. What is meant is only that the record is open to all. The record of a deed is not constructive notice to those whose titles accrued before its recording. It is only so as to subsequent purchasers who are bound to search the record. Bailey v. Galpin, 40 Minn. 319, 324, 41 N. W. 1054; Foster v. Coughran, 113 Minn. 433, 129 N. W. 853. The record does not cut off earlier interests by arbitrarily charging them with notice. But it does, in a proper case, arbitrarily give priority, because of lack of notice to their holders, to those accruing and recorded later if they are purchased for value and in good faith.

Remaindermen are not bound to mount guard over the record to prevent a life tenant from encumbering or alienating their title. They are not bound by notice of subsequent conveyances by him. In this case they did take subject to the original mortgage. But they had no notice, even constructive, of the life tenant's later mortgage to defendant, or its foreclosure.

■ The argument that defendant is a *bona fide* purchaser without notice cannot be allowed. Plaintiffs' title did not vest under any instrument of conveyance susceptible of being recorded. It vested in them automatically upon the death of their father. The decision below, at least by implication, absolves them of laches and immunizes them from estoppel. Whether, because they got title by a transfer not susceptible of being recorded, they are beyond reach of the recording act, we need not decide. See Snell v. Snell, 54 Minn. 285, 55 N. W. 1131, and School Dist. No. 10 v. Peterson, 74 Minn. 122, 76 N. W. 1126, 73 A. S. R. 337. Defendant was properly held a purchaser with notice. We have already stated the substance of the finding that defendant knew enough of the history of the life tenant (for a time her stepmother); the plaintiffs, her

children; and the connection of all three with the property to put her upon inquiry. One is not a purchaser in good faith, even though for valuable consideration and with no actual knowledge of an outstanding unrecorded title, if at the time he purchases he has knowledge of facts that ought to have put him on inquiry. Anything sufficient to put a person of ordinary prudence on inquiry is constructive notice of everything to which that inquiry presumably would have led. Bergstrom v. Johnson, 111 Minn. 247, 126 N. W. 899.

While defendant's acquisition of her mortgage indicated no bad faith on her part, the transaction was so unusual that, with her then knowledge of other circumstances, she is properly held, on the evidence, a purchaser with notice. Any inquiry would have brought her at once to the fact that plaintiffs were owners of the remainder, to ripen in fee upon the death of the life tenant.

It is argued correctly for defendant that, on the face of things, the possession of the life tenant, when she and her then husband, Duenwald, mortgaged the property, might have been referable to the seemingly absolute record title she had acquired by foreclosure of the mortgage on the property at the death of her first husband, Kaiser; Dutton v. McReynolds, 31 Minn. 66, 16 N. W. 468; Palmer v. Bates, 22 Minn. 532. In consequence, if the possession of the life tenant were the only thing depended upon to have put defendant upon notice, it could be held, we assume, that she had notice. But the affirmative holding at this point rests not alone upon the factor of possession. The circumstances, sufficient to have put defendant upon inquiry, have been mentioned above.

■ We cannot sustain the judgment insofar as it denies defendant any title to or interest in the property. When the life tenant redeemed from the original mortgage, she did so, as matter of law, for the benefit of her own life estate, and also that of plaintiffs as remaindermen. She did not thereby convert her life estate into an absolute fee. The former continued, and the title otherwise was held by her for the remaindermen under the settled rule of such cases as In re Lee, 171 Minn. 182, 213 N. W. 736; that is, upon contributing their share of the money expended by the life tenant

in redeeming, they would be reinvested with their title, discharged of the lien of the mortgage. Whitney v. Salter, 36 Minn. 103, 30 N. W. 755, 1 A. S. R. 656. To the extent that the money paid for redemption included interest accrued after Kaiser's death, the life tenant was but paying a claim against her own estate, and so no right to contribution resulted. *Contra* as to any interest accrued before Kaiser's death, which with the principal debt was then a charge on the whole estate.

When the life tenant, then Mrs. Duenwald, joined her husband in mortgaging the property to defendant, she mortgaged not only her life estate (since terminated by her death) but also the additional interest or lien (21 C. J. p. 959) which she had acquired by redemption from the original mortgage. Under the mortgage to defendant, which contained the usual covenants, the latter plainly acquired by her foreclosure whatever rights were possessed by the mortgagors. Swedish-Am. Nat. Bank v. Connecticut Mut. L. Ins. Co. 83 Minn. 377, 86 N. W. 420.

The judgment is wrong insofar as the right thus vested is denied. Defendant's lien to secure payment of the contribution chargeable against the estate of plaintiffs must be protected. It could be done by a decree establishing the lien, fixing its amount, and providing for foreclosure in the case of nonpayment. The same result could be reached by a judgment fixing the amount due from them by way of contribution, giving plaintiffs a reasonable time within which to make payment to defendant, and providing that, in default of such payment, a final decree should be entered quieting title in defendant and barring plaintiffs of any further right, title, or interest in the property. The latter procedure would result in a strict foreclosure. Whether the case is a proper one for that sort of relief will be determined below.

The judgment will be reversed and the case remanded for further proceedings conformable to this decision.

So ordered.

LORING, JUSTICE (dissenting).

I dissent. The right of contribution is an equitable right. In order to invoke that doctrine the equity of the party seeking relief

162

thereunder must be equal to that of those against whom the doctrine is invoked. 3 Pomeroy, Equity Juris. (4 ed.) § 1222. Here there was a personal obligation on the part of Mrs. Kaiser to pay the mortgage. Regardless of precedent (the majority cite none), I think that logic and fair dealing support the rule laid down by Jones on Mortgages that the personal obligation deprives the defendant of equality of equity. Mrs. Kaiser paid her own debt, and defendant now seeks to impose a part of it on plaintiffs, who never had the benefit of the money borrowed by Mrs. Kaiser. I find no logic in the distinction sought to be drawn by the majority between her personal obligation and a charge against the estate.

