# E. REGINALD BROWNING v. SELMA E. BROWNING AND CALEDONIA COMMUNITY HOSPITAL ASSOCIATION, INC.[1]

February 10, 1956.

Nos. 36,672, 36,675.

[1]Reported in 76 N. W. (2d). 100.

328

*C. Stanley McMahon, George, Brehmer & McMahon,* and *Lees & Bunge,* for appellant-respondent Selma E. Browning.

*Hale, Skemp, Nietsch, Hanson & Schnurrer* and *Sawyer, Sawyer & Darby,* for respondent-appellant The Caledonia Community Hospital Association, Inc.

*Harry H. Peterson* and *Duxbury & Duxbury,* for respondent E. Reginald Browning.

NELSON, JUSTICE.

This appeal involves an action commenced April 16, 1952, requesting a declaratory judgment[2] determining the rights of the parties to certain real estate in Caledonia, Houston County, Minnesota. The real estate consists of a hospital and the grounds or lot on which it is located. Dr. William E. Browning was the owner of the property during his lifetime, under unrecorded deeds, subject to a trust deed to secure payment of $12,000 in bonds. The trust deed in question is in legal effect a real estate mortgage and will be referred to as the mortgage. The mortgage was dated November 10, 1922, and matured on November 10, 1928.

Dr. William E. Browning died intestate at his home in Caledonia on May 6, 1929, leaving him surviving his widow (his second wife)

[2]See, M. S. A. c. 555.

who is the defendant Selma E. Browning, and his only son by a former marriage, the plaintiff, E. Reginald Browning, then 27 years of age. At the time of the doctor's death the mortgage on the hospital property was past due. Only small payments toward interest were made thereafter.

In accordance with the laws governing inheritance in cases of intestacy, the probate court of Houston County on November 3, 1933, rendered its final decree of distribution in the matter of Dr. Browning's estate assigning the property to Selma E. Browning for her natural life with remainder over in fee to E. Reginald Browning, which final decree was recorded.

Selma as the widow and life tenant continued to live in and operate the hospital after the doctor's death but was unable to pay off the mortgage. In the fall of 1934 the mortgagees commenced foreclosure proceedings of the mortgage, which was then nearly 6 years past due. The mortgagees were able to secure personal service of the summons in the State of Minnesota on the life tenant, Selma, but the remainderman, Reginald, was then a resident of Wisconsin. The summons and complaint were sent to the sheriff of Trempealeau County, Wisconsin, and were there served by the county sheriff personally on Reginald by leaving a copy thereof with him. The attorney's affidavit in the foreclosure suit did not state that a summons had been sent by mail to Reginald at his home in Wisconsin and in that respect was defective.

Judgment of foreclosure in that action was entered in the District Court for Houston County, Minnesota, on December 22, 1934. On February 18, 1935, the sheriff of said Houston County sold the property on mortgage foreclosure sale to the mortgagees and issued and delivered to them a sheriff's certificate of sale recorded February 26, 1935.

Prior to the expiration of the year for redemption, the life tenant conferred with the remainderman about saving the property but he had no money to assist in saving the property. There was no redemption. On March 30, 1936, the mortgagees in possession conveyed the property, based on the then present values, to Selma pursuant to

agreement providing for a downpayment of $2,000 and a mortgage for the term of 8 years executed by her to them for the balance of the purchase price.

Selma operated the hospital until 1943 when she leased it for 5 years during which time she paid off the purchase mortgage. On June 30, 1948, Selma sold the property under contract for deed to the defendant hospital. Under its terms she retained what she assumed to be the legal title and the hospital acquired what it assumed to be an equitable title as vendee.

■ Although it appears well established that jurisdictional defects, such as an inadequate affidavit of service, will not support a judgment entered in a foreclosure action, this appeal cannot be decided on the basis of that conclusion alone. The trial court's findings establish that there was a mortgage on the property in question. The mortgage debt matured prior to the death of Dr. Browning who had incurred the mortgage debt. The debt was not satisfied. The property passed by the laws of intestacy to the widow for life with remainder in fee to the son. The widow had no obligation to pay any part of the principal on the mortgage debt. A life tenant's only duty in respect to a prior mortgage lien upon the whole estate is to pay the current interest, pay the taxes, and otherwise keep the property in reasonable repair. Kreuscher v. Roth, 152 Minn. 320, 188 N. W. 996; Faulkenburg v. Windorf, 194 Minn. 154, 259 N. W. 802.

■ Selma and Reginald knew that there was a mortgage in default on the property that passed to them. Neither of them was able to pay the debt, although only Reginald as remainderman was liable for the principal amount of the debt due. Reginald was an adult at the time of his father's death and at the time of the abortive mortgage foreclosure sale proceedings. The record indicates that he was in communication with Selma during the period that the mortgage was in default and made not infrequent visits to Caledonia from his nearby home. The records indicate that he consulted a competent law firm in Winona, Minnesota, as to rights in the property well within the time necessary to act. All of these factors lead to the inescapable conclusion that Reginald is chargeable with complete inaction

during the 18-year interval between the mortgage foreclosure sale and the initiation of this action, which inaction is not to be excused. There is no evidence to show that Reginald has only recently been awakened to his claim.

Without going into estoppel, which may well apply here, one quotation is enlightening from Mr. Justice Mitchell of this court in Dimond v. Manheim, 61 Minn. 178, 182, 63 N. W. 495, 497, a case involving an invalid foreclosure proceeding in which the mortgagor after 20 years was held to be estopped to assert the invalidity:

"* * * First. To create an estoppel, the conduct of the party need not consist of affirmative acts or words. It may consist of silence or a negative omission to act when it was his duty to speak or act. Second. It is not necessary that the facts be actually known to a party estopped. It is enough if the circumstances are such that a knowledge of the truth is necessarily imputed to him. Third. It is not necessary that the conduct be done with a fraudulent intention to deceive, or with an actual intention that such conduct will be acted upon by the other party. It is enough that the conduct was done under such circumstances that he should have known that it was both natural and probable that it would be so acted upon."

Apparently, these principles are as strong today as they have ever been, particularly on the equity side of the law as applied to real estate.

A Minnesota case of close analogy and to some extent controlling on this appeal is that of Whitney v. Salter, 36 Minn. 103, 30 N. W. 755. Although this case appears to be cited in the reviews of the law, as to related fact situations, mainly because of the first sentence that Mr. Justice Mitchell wrote in the opinion, his qualifications of the first proposition appearing later in the opinion were determinative of the result reached. The first proposition is stated at 36 Minn. 105, 30 N. W. 755:

"The established doctrine is that a tenant for life in possession, in the purchase of an incumbrance upon, or an adverse title to, the estate, will be regarded as having made the purchase for the joint benefit of himself and the reversioner or remainder-man."

However, the qualification which is analogous to this appeal and is applicable here immediately follows:

"* * * The law will not permit him to hold it for his own exclusive benefit if the reversioner or remainder-man will contribute his share of the sum paid. If the life-tenant in such case pays more than his proportionate share, he simply becomes a creditor of the estate for that amount."

The Whitney case deals with the need for contribution by the remainderman, not the consequences of noncontribution. However, the implication is that unless there is contribution the remainderman takes nothing. This view is strongly suggestive of the reasonable conclusion that Selma on March 30, 1936, became a mortgagee in possession when alluding to the concluding sentence in Whitney v. Salter (36 Minn. 106, 30 N. W. 756):

"* * * He, and those claiming under him, would occupy a position analogous to a mortgagee in possession after condition broken, who cannot be ejected until all sums due on the mortgage have been paid."

If Selma is in the position of a mortgagee in possession, then how long is she required to wait before being paid by the remainderman? Fifteen years is almost more than a reasonable time, and this is the established period fixed by statute in this state during which a party, recognized as having rights to be protected following the date of the entry by the mortgagee in possession, must assert his position and act to protect his rights. The policy of the law is to provide free alienability; thus rights such as equity of redemption must be exercised within a limited time or those rights will be extinguished.

In Whitney v. Salter, *supra,* the court considers the doctrine that a life tenant of a renewable leasehold cannot renew for his own exclusive benefit. This conclusion, probably well justified, is much cited in the reviews to support a constructive-trust theory (running from life tenant to remainderman). The constructive-trust theory is well applied to the situation involving a life tenant of a renewable leasehold but has no support in the law as applied to this appeal.

The law provides that, if the remainderman pays the mortgage debt, the life tenant is liable for a share proportionate to the value of his life estate. However, when the encumbrance existed prior to the taking of the life estate, and in the absence of other contractual or testamenary provisions, the law provides generally that the life tenant's only duty is to keep current charges paid. As apparent, the law lends support to the claims of Selma, regardless of life tenancy in this case.

The situation that Selma found herself in at the time of the mortgage foreclosure is important to a decision on this appeal. The record indicates that she was dealing with a hostile stepson. The son had instituted an action in the Minnesota courts to have her marriage to the doctor declared void. The action had been unsuccessful. The doctor died leaving debts in the beginning of a period of economic depression. Since he was a doctor, apparently without an established staff to carry on, as may well be assumed from the record, income ceased immediately upon his death except for accounts receivable, which were for the most part uncollectible. The estate contained the hospital buildings and grounds which passed by the law of intestacy, thus without benefit of the doctor's wishes. Selma contacted Reginald several times during the period of foreclosure and before the statutory period of redemption expired. Conversation during visits, although usually strained because of antagonism, was devoted to methods of saving the hospital. Just prior to the expiration of the year for redemption, Reginald went to Caledonia at the request of Selma to discuss financing of the mortgage debt. Reginald declined to pay the debt. Selma could not rely on Reginald for help. She would have to find financial assistance otherwise, and on her own, to obtain the necessary financial help in order to make her purchase from the mortgagees in possession. She assumed a mortgage, to be paid out of income which might otherwise have been profit to her if Reginald had paid the principal of the prior mortgage debt that under the law he was obliged to pay.

Selma, as everyone else did at the time, assumed that the district court had jurisdiction in the mortgage foreclosure action. Seemingly

she could do no better than rely on the action of the district court in entering judgment in the foreclosure proceedings. The sheriff and the mortgagees who later went into possession acted in reliance on that judgment. Selma and the townspeople she dealt with for over 18 years thought that she had acquired title to the real estate after a valid proceeding in foreclosure by action of a preexisting mortgage. Her actions following the date when the mortgagees entered into possession are entirely in accord with the law. Reginald since that time has not acted in accordance with the law.

· This appeal, however, may be decided by reliance on the law of limitation of actions.[3] The facts as indicated in the findings of the trial court bear this out. The foreclosure action commenced in 1934 proceeded to judgment. The statutory year for the mortgagors to redeem expired without redemption. The doctrine of mortgagee in possession applies. Aside from the statute, the derivation of this doctrine is to be found in the common-law conception of a mortgage as a conveyance transferring right to possession from grantor to grantee which has been adopted, notwithstanding that under our law a mortgage creates merely a lien enforcible by foreclosure. 12 Dunnell, Dig. (3 ed.) § 6237.

■  In determining who is a mortgagee in possession, as applied to this appeal, reliance may be had on Minnesota cases of long standing. As stated in Backus v. Burke, 63 Minn. 272, 277, 65 N. W. 459, 461:

"We are of the opinion that when there is a default in the mortgage, and the mortgagee in apparent good faith makes a void foreclosure, and, after the end of the year to redeem, the purchaser at the foreclosure sale takes possession under color of the foreclosure proceedings, he should be treated as a mortgagee in possession, whether he takes possession with or without the consent, either express or implied, of the mortgagor. It is true that, unlike a mortgage at common law, a mortgage under our statute gives the mortgagee neither the title nor right of possession. But the courts were long ago compelled to recognize a marked difference between the

---

[3]See, M. S. A. 541.01, 541.02, 541.023, 541.03.

character of our statutory mortgage after default but before foreclosure, and the character of the same mortgage after an abortive foreclosure, and the year to redeem has expired. Thus it has been held that an ordinary conveyance, made by the mortgagee of the mortgaged premises before foreclosure, does not transfer or assign his mortgage lien. * * * But it is also held that such a conveyance, made by the purchaser at an abortive foreclosure sale, *does convey his mortgage lien* on the premises so attempted to be conveyed." (Italics supplied.) Also see, Rogers v. Benton, 39 Minn. 39, 38 N. W. 765.

As conclusively applied to this appeal, the mortgagees were mortgagees in possession and they conveyed their interest to Selma the life tenant on March 30, 1936. She took from them, as purchaser, their interest as mortgagees in possession, giving consideration to her grantors in an amount, as indicated in the referee's findings in the appeal, of the full value in fee of the property at the time. Of course, since that time the property has appreciated considerably in value.

▮▮▮▮ Reginald argues that Selma took as a life tenant under the decree of distribution in Dr. Browning's estate and thus that she held the property as a life tenant until 1948, the year of her sale by contract for deed to the hospital, and thereafter. This argument is not borne out by the trial court's findings. Her remaining in possession is not any more consonant with her being a life tenant than with her being a mortgagee in possession.

The letter written on behalf of Reginald in August 1948 to the hospital association is not the equivalent of exercising an equity of redemption. It has no effect on the outcome of this appeal other than to indicate that Reginald knew of the situation before the time expired to appropriately exercise his claim, which he did not do.

Plaintiff has presented an illuminating brief, but his conclusions based on the premise that once a life tenant, always a life tenant, cannot stand alone to support those conclusions. Of the cases, all of which are from other jurisdictions, that plaintiff cites as persuasive authority, the following seem to be closest to the facts in

this appeal, according to plaintiff, but all are distinguishable. In Hart v. Chase, 46 Conn. 207, the court held the life tenant a mortgagee because of payment of the debt, but not for the purpose of being chargeable for rents and profits after payment of the debt. Sisson v. Tate, 114 Mass. 497, also involved accounting for rents and profits to a mortgagor who had brought timely action under equity of redemption. Davis v. Flagg, 44 N. J. Eq. 109, 13 A. 257, involved accounting for rents and profits. It hardly seems necessary to point out the difference between cases involving accountability for rents and profits and this appeal involving title in fee to real estate. The Hart case recites (46 Conn. 213) "It was not for his interest to extinguish the life estate, * * *." Selma has at no time after 1936 asserted that she was a mere life tenant. On the contrary, all of her actions indicate that she was the owner of the property from that time on and after 1948 subject to an equitable title acquired by the hospital under contract for deed, which she as vendor executed to the hospital as vendee.

The trial court's finding No. 22, pertaining to Selma's inability to convey to the hospital any more than a life estate, should be set aside because it is a conclusion of law unsupported by the facts and the record. All other findings and conclusions of the trial court are consistent with the view of Selma having acquired the status of a mortgagee in possession.

"Findings of fact which are controlled or influenced by error of law are not final on appeal and will be set aside. An appellate court will not be bound by, and will review, the findings of the trial court, even though they be supported by the weight of the evidence, if such findings are manifestly controlled or influenced by errors of law." 1 Dunnell, Dig. (3 ed.) § 411.

Selma, taking as a mortgagee in possession, was entitled to reimbursement in the nature of equity of redemption, distinguished from statutory redemption, before being required to relinquish any rights.

"A mortgagee lawfully in possession after condition broken cannot be dispossessed by the mortgagor or persons in privity with him until his mortgage is satisfied. If he remains in possession until the right

of action to redeem is barred, and the mortgage is not paid, he becomes vested with an absolute legal title." 12 Dunnell, Dig. (3 ed.) § 6242.

Selma and her assignee hospital have remained in unbroken possession from March 30, 1936, until the present time. Selma maintains that since the expiration of the running of the 15-year statute of limitation, while she occupied the shoes of the mortgagee in possession, before the commencement of the present action by the remainderman, she is now possessed of the absolute legal title subject only to an equitable title held by the hospital under contract for deed.

Reginald has at no time tendered payment to the mortgagee so as to exercise his rights under his equity of redemption. Reginald started this action on April 16, 1952, which may or may not qualify as an action to redeem, but by 1952 Reginald was barred by the statute of limitations to exercise his equity of redemption.

As well settled in Minnesota, "The limitation upon the right to redeem, adopted by this court by analogy, is the statutory limitation on foreclosure by action." Bradley v. Norris, 63 Minn. 156, 168, 65 N. W. 357, 359; 12 Dunnell, Dig. (3 ed.) § 6486. The statute of limitations on the right to foreclose is fifteen years. M. S. A. 541.03. Although it appears that the United States Supreme Court in Peugh v. Davis, 96 U. S. 332, 24 L. ed. 775, held that the equitable right to redeem expired with the right to foreclose, which would be fifteen years after the debt matured, it is well settled in Minnesota that the time begins to run from the time the mortgagee goes into possession. Bradley v. Norris, *supra;* 12 Dunnell, Dig. (3 ed.) § 6486. Selma went into possession as a mortgagee on March 30, 1936, thus the period for equity of redemption expired in 1951, after fifteen years, over a year before this action was commenced.

After holding as a mortgagee in possession beyond the period of equity of redemption, the interest ripens into fee. "Where the holder of the mortgage has gone into possession as 'mortgagee in possession,' and so remains (the mortgage being unpaid) until the right of action to redeem is barred, he becomes vested with an absolute legal title

to the mortgaged premises." Rogers v. Benton, 39 Minn. 39, 45, 38 N. W. 765, 769; 12 Dunnell, Dig. (3 ed.) § 6242.

Selma and her assignee hospital held the property beyond the 15-year period of limitation during which the mortgagor did not exercise his equity of redemption (at least pay the principal of the mortgage).

Since this appeal has support in the decisions of this court herein cited, and it is clear that Reginald's claim has been barred by the statute of limitations as the record clearly discloses, there is no need to consider the issues presented by the claims and counter-claims for damages by Selma and the hospital. Selma's interest as a mortgagee in possession, which she has agreed to convey under the contract for deed to the hospital, ripened into an absolute fee more than a year before Reginald commenced the present action. With the knowledge possessed by the remainderman here, it was incumbent upon him, both in justice to the life tenant and in equity, to act before the 15-year statute expired. In fact, Reginald was fully cognizant of the overdue condition of the mortgage debt immediately following his father's death in 1929, and the record permits no other conclusion.

Judgment reversed and case remanded to the district court of Houston County with instructions to enter findings of fact and conclusions of law in accordance with the decision herein rendered.

Reversed.