Sheryl Lynn LOGAN, Appellant,

Roger Leroy Logan, et al., Plaintiffs,

v.

NORWEST BANK MINNESOTA,
N.A., et al., Respondents.

No. C7–99–817.

Court of Appeals of Minnesota.

Dec. 27, 1999.

Barry G. Reed, Ronald S. Goldser, J. Gordon Rudd, Jr., Zimmerman Reed, PLLP, Minneapolis, MN; and Thomas J. Lyons, Thomas J. Lyons & Associates, PA, St. Paul, MN (for appellant).

James L. Volling, John Edward Connelly, Faegre & Benson, LLP, Minneapolis, MN (for respondent).

Considered and decided by SHUMAKER, Presiding Judge, DAVIES, Judge, and WILLIS, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges summary judgment in favor of respondent on her breach-of-contract claim and the district court's denial of her motion for class certification. We reverse and remand.

## FACTS

In May 1989, appellant Sheryl Lynn Logan financed the purchase of a used car through respondent Norwest Bank Minnesota, N.A., using the car as collateral. In connection with the loan, Logan signed both an agreement that she would provide fire, theft, and collision insurance on the car ("FTCI agreement") and an installment-payment agreement. The FTCI agreement provided that if Logan failed to maintain the required insurance, Norwest could declare the balance of her account immediately due or "purchase [insurance] coverage for its interest" and add the premium to her account balance. The installment-payment agreement provided that if Logan failed to maintain for the car insurance that covered physical damage and loss, Norwest could purchase "such insurance" and add the premium to her account balance.

Logan first allowed the insurance on her car to lapse in September 1990. In November 1990, Norwest elected to purchase a collateral-protection insurance ("CPI") policy covering the car. The policy was for one year, effective retroactively to September 1990, and the $1,275 premium was added to Logan's account balance.[1] Logan obtained her own insurance in April 1991, and accordingly a premium rebate of $343 was credited to her account. Logan again allowed the insurance on her car to lapse in September 1993. In October 1993, Logan was in an accident in which the car sustained nearly $3,000 in damage. Norwest again elected to purchase a CPI policy covering the car, and again the policy was effective retroactively to the time Logan allowed her insurance to lapse, thereby covering the damage to Logan's car. The proceeds from the CPI policy paid for the damages to Logan's car were applied to her account, and the $469 premium for the policy was added to her account balance.

Logan made no further payments on her account, and in March 1994, after crediting a premium rebate of $168, Norwest closed the account with an outstanding balance of $1,103. Logan's credit-disability insurance—separate insurance that is not at issue here—paid the outstanding balance.

Logan, her father, who guaranteed the loan, and a separate borrower, Donald Anderson, filed a putative class-action complaint against Norwest and the insurance company that issued the CPI policies. The parties made numerous claims, including breach of contract. The district court granted the insurance company's motion to dismiss and granted summary judgment for Norwest against Anderson. We affirmed in *Logan v. Norwest Bank Minne-*

*sota, N.A.*, 1997 WL 193917 (Minn.App. 1997), *review denied* (Minn. June 26, 1997).

Logan then pursued her claims, alleging breach of contract and breach of an implied covenant of good faith and fair dealing on the ground that Norwest overcharged her by purchasing insurance coverages not authorized under their contract and adding the premiums for those coverages to her account.[2] Logan moved the district court for partial summary judgment and class certification, and Norwest moved for summary judgment on Logan's claims and on her father's common-law claims. The court granted Norwest's motion for summary judgment and denied Logan's motions. Logan appeals from summary judgment on her breach-of-contract claim and the denial of her motion for class certification.

### ISSUES

1. Did the district court err in granting summary judgment on Logan's breach-of-contract claim on the ground that she could not demonstrate damages?

2. Did the district court err in granting summary judgment on Logan's breach-of-contract claim on the ground that she was estopped from pursuing her claim?

3. Did the district court err in denying Logan's motion for class certification?

### ANALYSIS

**I. Summary Judgment**

On appeal from summary judgment, this court asks (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We view the

---

1. A lender's purchase of a CPI policy to cover a borrower's uninsured vehicle, and the subsequent charge of the CPI premium to a borrower's account, is commonly known as "forced placement." *See, e.g.*, Alvin C. Harrell, *Forced–Placed Insurance Hits the Spotlight*, 48 Consumer Fin. L.Q. Rep. 513, 513 (1994).

2. Logan alleges that only the 1990 CPI policy Norwest purchased included four unauthorized coverages—instrument-non-filing-errors-and-omissions coverage, mechanic's-lien coverage, repossession-expense coverage, and premium-deficiency coverage.

evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). The construction and effect of a contract are questions of law subject to de novo review by this court. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979).

Logan argues that the district court erred in granting summary judgment for Norwest on her breach-of-contract claim after it determined that she could not demonstrate damages and that she was estopped from asserting the claim. We review these determinations in turn.

## A. Damages

■ The contract between Logan and Norwest comprises both the FTCI agreement and the installment-payment agreement. *See Marso v. Mankato Clinic, Ltd.,* 278 Minn. 104, 114, 153 N.W.2d 281, 288–89 (1967) (stating that multiple instruments executed at the same time and for the same purpose are one contract); *Lakeview Terrace Homeowners Ass'n v. Le Rivage, Inc.,* 498 N.W.2d 68, 73 (Minn.App. 1993) (stating that several instruments made at the same time and relating to the same subject are to be construed together with reference to each other). The FTCI agreement states:

> I understand that to provide protection from serious financial loss, should an accident or loss occur, [Norwest] requires the collateral securing my loan to be continuously covered with insurance against the risks of fire, theft, and collision, and that failure to provide such insurance gives [Norwest] the right to declare the entire unpaid balance immediately due and payable or alternatively to purchase coverage for its interest and add the premium plus interest to the balance.

The installment-payment agreement includes the following provision:

> If you [Norwest] require property insurance, I [Logan] must cover all risks of physical damage to the property and the risk that the vehicle may be lost. * * * I promise to keep the property insured throughout the term of my loan * * *.
>
> * * * *
>
> I also agree that if I fail to keep any required insurance on the property, you may purchase such insurance for me. I will immediately repay you for any amount you spend in purchasing that insurance, plus interest at the "annual percentage rate" disclosed on the other side of this contract.

■ Logan failed to maintain the required insurance; she was, therefore, then in breach of the contract between the parties. The contract gives Norwest alternative remedies upon Logan's failure to maintain the required insurance: (1) declaring the entire unpaid balance immediately due and payable or (2) purchasing insurance covering the car. But when a lender like Norwest exercises its option to force place insurance after a borrower breaches a contract by failing to maintain the required insurance, the lender may force place only such insurance as is authorized by the contract between the parties. *See McClain v. South Carolina Nat'l Bank,* 105 F.3d 898, 902 (4th Cir.1997); *General Motors Acceptance Corp. v. Baymon,* 732 So.2d 262, 268–69 (Miss.1999); *Logsdon v. Fifth Third Bank,* 100 Ohio App.3d 333, 654 N.E.2d 115, 119 (Ohio Ct.App.1994); *Brannon v. Boatmen's Nat'l Bank,* 1999 OK CIV APP 17, 976 P.2d 1077, 1079 (Okla.Ct.App.1998), *cert. denied* (Okla. Feb. 1999); *cf. Independent Consol. Sch. Dist. No. 24 v. Carlstrom,* 277 Minn. 117, 120, 151 N.W.2d 784, 786 (1967) (stating that contract provisions dictating the consequences of breach of contract are controlling, if reasonable); *Dean Van Horn Consulting Assocs., Inc. v. Wold,* 367 N.W.2d 556, 560 (Minn.App.1985) (enforcing contract provision that specified reasonable liquidated damages after breach of contract), *review denied* (Minn. July 17, 1985).

■ Logan alleges she is entitled to damages because Norwest breached the contract between the parties by purchasing insurance coverages not authorized by the contract, and that she was, therefore, overcharged when Norwest added the premiums for those unauthorized coverages to her account balance. Under a general allegation of damages resulting from a breach of contract, a plaintiff may recover those damages that naturally and necessarily result from the alleged breach. *Independent Brewing Ass'n v. Burt,* 109 Minn. 323, 327, 123 N.W. 932, 934 (1909). Logan's complaint makes a general allegation of damages resulting from Norwest's alleged breach of contract. Thus, we must determine if the facts, viewed in a light most favorable to Logan, support a viable theory of damages that naturally and necessarily result from Norwest's alleged breach of contract.

■ The district court concluded that because Logan "cannot prove damages, an essential element of her breach-of-contract claim, that claim fails and Norwest's motion for summary judgment must be granted." *See generally Despatch Oven Co. v. Rauenhorst,* 229 Minn. 436, 447, 40 N.W.2d 73, 80 (1949) (affirming judgment against party who could demonstrate only nominal damages arising from an alleged breach of contract); *Sloggy v. Crescent Creamery Co.,* 72 Minn. 316, 317–18, 75 N.W. 225, 226 (1898) (affirming dismissal of breach-of-contract claim where party could not demonstrate that damages arose from contract). The court noted that reliance damages or expectation damages are alternatives available to a party alleging breach of contract. *See generally* Restatement (Second) of Contracts § 344 (1981) (stating that judicial remedies serve to protect a promisee's expectation and reliance interests). Reliance damages reimburse losses arising from a party's change in its position in reliance on a contract. *Nguyen v. Control Data Corp.,* 401 N.W.2d 101, 105–106 (Minn.App.1987). In determining reliance damages, a court attempts to place the non-breaching party in the position it would be in had the contract not been made. Restatement (Second) of Contracts § 344(b) (1981). The district court found that because Logan would not have received compensation for the nearly $3,000 in damage to her car without Norwest's election to purchase the insurance, she could not demonstrate damages, and it therefore granted summary judgment on her breach-of-contract claim. The court did not address expectation damages in its analysis.

■ But Logan seeks damages that will reimburse her for the allegedly unauthorized premiums Norwest charged to her account; she does not seek a return to the status quo ante. Logan seeks expectation damages, damages that attempt to place the plaintiff in the same position as if the breaching party had complied with the contract. *Wilhelm Lubrication Co. v. Brattrud,* 197 Minn. 626, 633, 268 N.W. 634, 636–37 (1936); *Peters v. Mutual Benefit Life Ins. Co.,* 420 N.W.2d 908, 915 (Minn.App.1988); Restatement (Second) of Contracts § 344(a) & cmt. a (1981). The benefit Logan received from the insurance for which she was charged is irrelevant to the determination of expectation damages. If Logan can show that Norwest breached the contract, an issue on which we express no opinion, she would be entitled to be placed in the position she would have been in if Norwest had complied with the parties' contract and purchased only coverages authorized by that contract.

Norwest argues that the facts here necessarily lead to the result that we affirmed in *Logan v. Norwest Bank Minnesota, N.A.,* 1997 WL 193917 (Minn.App.1997), *review denied* (Minn. June 26, 1997) [hereinafter *Logan I* ]. There, Anderson did not pay to Norwest the amount of the premium he claimed he was overcharged. 1997 WL 193917, at *3. Here, Norwest argues that the $1,233 in CPI-policy premiums added to Logan's account over nearly four years were carried for the duration of her loan. Norwest argues that even when the

allegedly unauthorized charges of $101.60 (as calculated by Norwest) are subtracted from $1,233, the resulting balance of $1,131.40 is still more than the $1,103.42 that Norwest accepted as final payment on Logan's account. Thus, Norwest asserts that Logan underpaid the insurance premiums by $27.98, even taking into account the alleged overcharge. But a Norwest collections supervisor states by affidavit that the CPI proceeds paid for the damage to Logan's car were applied directly to Logan's account balance and that the CPI premiums were the first portion of her balance to which the proceeds were applied. This left a balance owed of $1,103, the amount of Logan's final payment. Additionally, Norwest does not cite any evidence in the record suggesting that Logan's account balance was not paid in full. In contrast with *Logan I,* on the record before us, it appears that Logan's account, including the CPI-policy premiums, was paid in full.

■ Because there is a genuine issue of material fact whether Logan was damaged by Norwest's purchase of allegedly unauthorized insurance coverages, summary judgment on the ground that Logan is unable to demonstrate damages was inappropriate.

### B. Estoppel

■ The district court also found that Logan was estopped from raising her breach-of-contract claim because when she accepted the benefits of the forced-placed insurance, she ratified the contract and could not then "seek to abjure" it.[3] A party may be estopped from challenging an act unauthorized by a contract when the party has ratified the act. *Steffens v. Nelson,* 94 Minn. 365, 369, 102 N.W. 871, 873 (Minn.1905). "To ratify is to give sanction and validity to something done without authority." *Id.* at 368, 102 N.W. at 873 (citation omitted). But a party cannot be estopped by ratification "unless the party sought to be estopped had full knowledge of the facts at the time of the conduct claimed to give rise to the estoppel." *State ex rel. Caffrey v. Metropolitan Airports Comm'n,* 310 Minn. 480, 488, 246 N.W.2d 637, 642 (1976); *Village of Wells v. Layne–Minnesota Co.,* 240 Minn. 132, 141, 60 N.W.2d 621, 627 (1953); *Steffens,* 94 Minn. at 369, 102 N.W. at 873. The record shows that Logan knew that Norwest twice purchased insurance on her car and added the premiums for that insurance to her account balance. But the documentation Norwest provided to Logan notifying her that it had purchased insurance does not identify any of the coverages included. The facts, viewed in a light most favorable to Logan, show that there is a question as to whether Logan knew, at the time she accepted the benefit of the insurance, that the allegedly unauthorized coverages were included in the CPI policy Norwest purchased. Because Logan could not ratify the forced placement of these coverages without such knowledge, there is a genuine issue of material fact regarding whether she ratified Norwest's alleged breach of contract.[4]

3. We note that Logan does not seek to "abjure" the contract, under the common meaning of the term, in her claim for breach of contract. *See* Black's Law Dictionary 7 (6th ed.1990) (defining "abjure" as "[t]o renounce" or "abandon"). Logan would be estopped from renouncing the entire contract because she has accepted substantial benefits under it. *See, e.g., Cut Price Super Markets v. Kingpin Foods, Inc.,* 256 Minn. 339, 352, 98 N.W.2d 257, 267 (1959). But while Logan does challenge in other counts of her complaint Norwest's authority to force place any insurance, her breach-of-contract claim seeks reimbursement only for the premiums paid for the allegedly unauthorized coverages. This inconsistency does not estop her from making a breach-of-contract claim. *See Northwestern State Bank v. Foss,* 293 Minn. 171, 177, 197 N.W.2d 662, 665–66 (1972) (stating that a party may seek to rescind a contract or seek breach-of-contact damages under a contract, or both, until one remedy is pursued to a determinative conclusion).

4. We note that there would be a question whether Logan could be estopped from asserting a breach-of-contract claim arising from allegedly unauthorized coverages in

Logan would still be estopped from asserting her claim if knowledge of the extent of the coverages encompassed by the CPI could necessarily be imputed to her. *See Browning v. Browning,* 246 Minn. 327, 331, 76 N.W.2d 100, 103 (1956); *see also Froslee v. Sonju,* 209 Minn. 522, 526, 297 N.W. 1, 4 (1941) (stating that knowledge of facts cannot be imputed unless party "was guilty of culpable negligence in not knowing them"). But the record suggests that the coverages purchased by Norwest and now challenged by Logan are not available to the general public, and we are aware of nothing that would suggest Logan had a duty to be aware of the coverages in an insurance policy that Norwest purchased to protect its interests.

Because there is a genuine issue of material fact regarding whether Logan knew that the allegedly unauthorized coverages were included in the CPI policy when she accepted the benefit of the insurance, summary judgment on Logan's breach-of-contract claim on the ground of estoppel by ratification was improper.

## II. Class Certification

The district court denied Logan's motion for class certification because it concluded that Logan was an unsuitable class representative. The court based this conclusion on its determination that Logan could not demonstrate damages and that she was estopped from raising her breach-of-contract claim. Because of our reversal and remand on those two issues, we reverse and remand the district court's denial of Logan's motion for class certification to allow it to reconsider the issue of class certification.

## DECISION

We reverse the district court's grant of summary judgment on Logan's breach-of-

contract claim and the court's denial of her motion for class certification and remand. We express no opinion on the merits of Logan's claim or on how the district court should determine the remanded issues.

**Reversed and remanded.**

1993 if, to receive contractually authorized insurance that would cover the accident, she was required knowingly to accept unauthorized coverages. *Cf. Suske v. Straka,* 229 Minn. 408, 417, 39 N.W.2d 745, 751 (1949) (stating that party "free to accept or reject without serious inconvenience" is estopped from repudiating contract after accepting benefits thereunder).